Sᴛᴀᴛᴇ ᴏꜰ Kᴀɴsᴀs, *Appellant,* v. Gᴏʀᴅᴏɴ R. Hɪᴄᴋs, *Appellee.*

147 P.3d 1076

Opinion filed December 8, 2006.

*Rick J. Scheufler,* special counsel, argued the cause, and *Phill Kline,* attorney general, was with him on the brief for appellant.

*Michael S. Holland*, of Holland and Holland, of Russell, argued the cause, and *Michael S. Holland II*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal addresses the sufficiency of an affidavit supporting a search warrant, including the appropriate standard for review of the issuing magistrate's decision.

Defendant Gordon R. Hicks was charged with three drug possession counts and one count of intent to distribute drugs within 1,000 feet of a school. His arrest followed police execution of a search warrant at his home.

Hicks moved to suppress the evidence seized, and the district judge granted the motion, ruling the affidavit supporting the warrant was insufficient. The State filed an interlocutory appeal, and the majority of the assigned Court of Appeals panel reversed the district judge's decision. See *State v. Hicks*, No. 93,602, unpublished opinion filed October 28, 2005. Judge Nancy L. Caplinger dissented. We granted Hicks' petition for review.

This case began when Officer Joshua Brown, with 9 months' experience on the Hoisington police force, including work on two drug cases, presented an application for a search warrant for Hicks' home. Brown had executed the affidavit in support of the application. After reciting his qualifications, the affidavit read in pertinent part:

"2. Members of the Hoisington Police Department informed affiant that Gordon Hicks, who resides at 317 E. 5th St., Hoisington, Kansas, had drug activity going on at his residence. This information was obtained . . . through information given to them by concerned citizens in the neighborhood. The citizens have informed officers there are a lot of people coming and going from Gordon Hick[s'] residence. One concerned citizen informed Officers that one night they went to Hick[s'] residence looking for their daughter and when Hicks opened the front door a large amount of smoke came out. The concerned citizen told Officers the smoke was Marijuana smoke. Another citizen living in the area told Officers Gordon Hicks changes his outside porch light with colored bulbs. The citizen stated when Hicks puts in a certain color people start stopping at Hick[s'] residence. In the past several weeks Affiant and other Officers of the Hoisington Police Department have been watching Gordon Hick[s'] residence. On April 5, 2003 at 1607 hrs. Jeff Shelor arrived at Hick[s'] house. Jeff Shelor was checked through [records] which indicated that Shelor was arrested for possession of Metham-

phetamine on June 14, 2000. On April 5, 2003 at 1700 hrs and again at 1846 hrs. Eric Tauscher showed up at Gordon Hick[s'] residence. Eric Tauscher was checked through [records] which indicated that Tauscher was arrested on July 7, 2000 for Possession of Methamphetamine, Sale/Manufacturing other dangerous Non-Narcotic Drugs, and Possession of [Psuedoe]phedrine. A check of the criminal history records revealed that, on January 01, 2002, Eric Tauscher was placed in El Dorado Correctional Facility for Possession of Ephedrine. . . . On April 19, 2003 at 1907 hrs., Eric Tauscher returned to the residence again.

"3. On April 14, 2003 Affiant and Officer Israel Barrera of the Hoisington Police Department observed a large black trash bag behind Gordon Hick[s'] residence next to the alley. Affiant and Officer Barrera picked up the bag and brought it to the Hoisington Police Department to check the contents. In the bag Affiant and Officer Barrera . . . located numerous brown and green stems and seeds. Affiant observed Officer Barrera field-[test] a stem and some seeds . . . and g[e]t a positive test for Marijuana. On April 21, 2003 Affiant again drove in the alley behind Gordon Hicks' house and located another large black plastic trash bag next to the alley. This location is the normal place Gordon Hicks[] places his trash for [pickup] on Mondays, the normal trash day. Affiant brought the black bag back to the Hoisington Police Department and searched it. Inside the black bag Affiant found . . . several brown and green stems and seeds and one roach (partial marijuana cigarette). Affiant field-tested one of the stems . . . and got a positive test for Marijuana. . . .

"4. Affiant ran Gordon Hicks through [records] and found that Gordon Hicks had been arrested and convicted on drug charges as follows: 05/20/1975 -Possession of Marijuana, 06-09-1995 -Possession [sic] Manufacture Drug Paraphernalia, 05-28-1997 -Sale of Methamphetamine and sale of Marijuana within 1000' of a school.

"5. A check of municipal records revealed that 317 E. 5th street Hoisington Kansas has utilities . . . hooked up in the name of Lyle Hicks who is the deceased father of Gordon Hicks. The Hoisington Police Department Rolodex has the residence in the name of Gordon Hicks. Affiant and other Officers of the Hoisington Police Department have personal knowledge that Gordon Hicks resides at 317 E. 5th Street Hoisington Kansas."

Judge Barry A. Bennington reviewed the application and affidavit and issued a search warrant for Hicks' residence.

On a later motion to suppress, Judge Hannelore Kitts held that under the totality of the circumstances the affidavit "[did] not provide 'an indicia of probable cause' to conclude illegal drugs would be found at Defendant's residence." Specifically, Judge Kitts concluded the affidavit did not contain sufficient substantial information because there was no indication regarding the informants' ve-

racity or bases of knowledge; there was no time frame concerning when the informants made their reports or when the suspicious activities were observed; and there was no corroboration of informants' statements. Also, the mere fact that two visitors had prior drug-related criminal histories was unpersuasive. Further, the contents of the two trash bags did not provide corroboration because defendant denied ownership of the bags; police did not observe defendant placing the bags in the alley; and there was nothing linking the evidence in the bags to defendant. Judge Kitts noted that "anyone could have deposited the bags at this location."

Judge Kitts also held that the good faith exception to the exclusionary rule of *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984), was inapplicable because there was so little indicia of probable cause in the affidavit that it was unreasonable for the executing officers to believe the warrant was valid.

On the State's interlocutory appeal, Judge G. Joseph Pierron and Senior Judge John J. Bukaty were in the majority. They determined that Judge Kitts impermissibly performed a de novo review of the warrant's supporting affidavit. They reasoned that review of such affidavits should be deferential to the issuing magistrate and that, although this case was "a close call, when viewed in the light of the totality of the circumstances, the issuing magistrate had a substantial basis for concluding probable cause existed for issuing the warrant." *Hicks*, slip op. at 17. They reversed the suppression of the evidence on that basis. They also stated that reversal would have been appropriate under *Leon*. *Hicks*, slip op. at 18.

In her dissent, Judge Caplinger concluded that the affidavit, at best, gave rise to suspicion of drug activity, but it did not establish the existence of probable cause. She asserted that the Court of Appeals majority impermissibly relied on inferences rather than facts in the record. *Hicks*, slip. op. at D-1.

## Standard of Review

Initially, we must acknowledge some inconsistency in the standard of review recited and applied in our previous cases of this type.

One formulation, invoked in this case by the Court of Appeals majority, requires a reviewing court to ensure that the magistrate that issued the search warrant had a *substantial basis* for concluding probable cause existed. In making its determination, " 'the reviewing court is required to pay *great deference* to the issuing magistrate's finding of probable cause for the issuance of the warrant, and . . . after-the-fact scrutinizing should *not* take the form of de novo review.' [Citation omitted.]" (Emphasis added.) *Hicks*, slip. op. at 3.

This formulation is the one clearly applied by us in *State v. Gilbert,* 256 Kan. 419, 886 P.2d 365 (1994). In *Gilbert*, a magistrate had issued a search warrant, and a district court judge had suppressed the fruits of the search, holding the affidavit supporting the search warrant application insufficient. The Court of Appeals upheld the district judge's decision. *Gilbert*, 256 Kan. at 425.

On review, we first differentiated the standard of review to be applied in a case determining the *propriety of a warrantless search* and one in which the reviewing court was examining a magistrate's *decision to issue a search warrant*. In the latter case, we said:

"Where the district court, itself, is reviewing the propriety of the issuance of a search warrant by a magistrate, a district court and any other subsequent reviewing court assume a different role. The determination is made by examining the warrant and its supporting affidavit to determine if the issuing magistrate had a substantial basis for concluding that probable cause existed. As was held in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), and followed in *State v. Abu-Isba*, 235 Kan. 851, 685 P.2d 856 (1984):
'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., including the "veracity" and "basis of knowledge" of [any] persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.' [Citation omitted. *Gates*,] 462 U.S. at 238-39." *Gilbert*, 256 Kan. at 421.

We then continued quoting from the United States Supreme Court's *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), decision:

" '[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." [*Spinelli v. United States*, 393 U.S. 410, 419, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969)]. "A grudging or negative attitude by reviewing courts toward warrants," [*United States v. Ventresca*, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965),] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." [*Ventresca*, 380 U.S. at 109.]' 462 U.S. at 236." *Gilbert*, 256 Kan. at 421.

In spite of these strong statements in favor of deference to the magistrate in *Gilbert*, two Kansas cases filed nearly contemporaneously with *Gilbert* can be read to support de novo review of affidavits in support of search warrant applications. In those two cases—*State v. Ratzlaff*, 255 Kan. 738, 877 P.2d 397 (1994), decided 5 months before *Gilbert*, and *State v. Longbine*, 257 Kan. 713, 896 P.2d 367 (1995), decided 6 months after *Gilbert*—this court recites the standards *Gilbert* took from *Gates* but restates the inquiry and subjects the affidavits at issue to remarkably thorough critiques.

We discuss the relevant particulars of these cases in the order they were decided.

In *Ratzlaff*, we initially set out the correct inquiry: "Was the information in the police affidavit supporting the application for a search warrant sufficient to form a substantial basis for concluding that probable cause existed?" 255 Kan. at 738. As in this case, a district court judge had suppressed the evidence seized from defendant's residence pursuant to the warrant, ruling that no probable cause for its issuance existed and that the *Leon* good faith exception to the exclusionary rule did not apply.

We described the content of the *Ratzlaff* affidavit thus:

"The affidavit contained the following information: Detective Shipley, on two previous occasions within two years, had received accurate information from a confidential informant about individuals involved in drug transactions. In April 1992, the informant told Detective Shipley about a large-scale marijuana and cocaine distribution operation in Hutchinson supplied by Leo Gutierrez and run by William R. Meyers and David Ratzlaff. The informant named several people who he said were provided cocaine by Meyers and Ratzlaff. He said that Ratzlaff lived on West 23rd Street, and Detective Shipley determined that Ratzlaff's res-

idential address was 600 West 23rd Street in Hutchinson. The informant over-heard conversations which indicated that Gutierrez would deliver a large quantity of cocaine to Meyers and Ratzlaff in Reno County by the weekend of May 15-17, 1992. On May 11, Detective Shipley saw three Hispanic males at Meyers' residence in South Hutchinson. Their vehicle was registered to Gutierrez. On May 17, 1992, the informant contacted Detective Shipley and said that 'Gutierrez was in Hutchinson and the deal was taking place.' The informant said that Meyers sold marijuana he got from Gutierrez to James Roets. Detective Shipley saw Roets at Meyers' residence in South Hutchinson. Roets went from there to 2210 N. Obee Road, the residence of one of Meyers' customers, and then to another residence owned by Meyers, on Obee Road, where there was a pickup truck registered to Gutierrez. After leaving Hutchinson, the pickup was stopped with more than $32,000 cash in it." 255 Kan. at 739-40.

The *Ratzlaff* Court of Appeals reversed the district court's decision, concluding it was reasonable, based on the evidence in Shipley's affidavit, to conclude that there was probable cause to issue a search warrant. *Ratzlaff,* 255 Kan. at 742.

We began our analysis by discussing *Gates'* command that the "totality of the circumstances" be considered, its admonition that the "veracity" and "basis of knowledge" of persons supplying hearsay information be examined, and its exhortation to avoid de novo review in favor of great deference to the magistrate's determination. *Ratzlaff,* 255 Kan. at 743 (quoting *Gates,* 462 U.S. at 236, 238). We then noted that the district court and Court of Appeals reached opposite conclusions. *Ratzlaff,* 255 Kan. at 743. Then, observing that probable cause " 'does not require evidence of each element of the crime or evidence to the degree necessary to prove guilt beyond a reasonable doubt,' " *Ratzlaff,* 255 Kan. at 744 (citing *State v. Abu-Isba,* 235 Kan. 851, 853-54, 685 P.2d 856 [1984]), and that it had been described as " '[b]its and pieces of information . . . fitted together until a picture is formed which leads a reasonably prudent person to believe [that] a crime has been . . . committed and that evidence of the crime may be found on a particular person or in a place or means of conveyance,' " *Ratzlaff,* 255 Kan. at 744 (quoting *State v. Marks,* 231 Kan. 645, 647, 647 P.2d 1292 [1982]), we then restated the *Gates* standard, setting up more searching review: "The question before the court is whether the information in Detective Shipley's affidavit would

lead a *reasonably prudent* person to believe that Ratzlaff had committed a crime and that evidence of it would be found in his residence." (Emphasis added.) 255 Kan. at 744.

To get a fix on what a "reasonably prudent" person would believe, we carefully examined the facts of four earlier search warrant cases, three not involving confidential informants and one involving a confidential informant. *Ratzlaff*, 255 Kan. at 744-49 (citing *State v. Doile*, 244 Kan. 493-95, 501, 503, 769 P.2d 666 [1989] [cocaine possession conviction reversed; no facts in affidavit to show current drug-related activity at residence]; *State v. Mayberry*, 248 Kan. 369, 372, 378, 807 P.2d 86 [1991] [first-degree murder, aggravated burglary convictions affirmed; cumulative circumstantial evidence in affidavit sufficient for probable cause to search house, car]; *State v. Grissom*, 251 Kan. 851, 909-10, 840 P.2d 1142 [1992] [evidence defendant recently moved personal belongings to car contributed to "fair probability" evidence would be found there]; *State v. Probst*, 247 Kan. 196, 198, 203, 795 P.2d 393 [1990] [absence of information showing reliability or knowledge of confidential informant, inexperience of agent, staleness of drug conviction persuade court affidavit insufficient]). We then independently compared the facts in *Ratzlaff* to those underlying the four cases, concluding:

"In the present case more than in *Probst,* emphasis has been placed by the parties on the question whether the information was sufficient to link Ratzlaff's residence with the alleged drug trafficking. In this regard, the State relies on *State v. Bartlett,* 14 Kan. App. 2d 237, 242, 787 P.2d 1211, *rev. denied* 246 Kan. 769 (1990), for the rule that 'normal inferences as to where a person would be likely to keep the items sought' may be indulged. Following the rationale of *Bartlett,* one might conclude that a reasonably prudent person would believe that evidence of the crime would be found in Ratzlaff's residence *if* it concluded that the same reasonably prudent person would believe he had committed a crime. It is this second proposition that lacks support in the affidavit. In addition, the affidavit must establish a nexus between the alleged criminal activity and the place to be searched.

"In summary, the affidavit contains the following information: (a) The confidential informant told police that Ratzlaff and Meyers were the main dealers in a large-scale marijuana and cocaine distribution ring in Hutchinson and that Meyers sells the marijuana to James Roets; (b) the informant gave the police Ratzlaff's correct residential address; (c) the informant named several people who he said

were cocaine customers of Meyers and Ratzlaff; (d) the informant overheard conversations during the week before May 17, 1992, indicating that a large quantity of cocaine would be delivered by Leo Gutierrez to Meyers and Ratzlaff 'by the weekend of May 15 and 16, 17, 1992'; (e) on May 17, the informant told police that Gutierrez was in Hutchinson; (f) police observed Meyers, Roets, and Gutierrez in various vehicles and at various locations which the informant had linked to Meyers; and (g) Gutierrez's vehicle was stopped with a large quantity of cash in it.

"Hence, a confidential informant said that Ratzlaff was a drug trafficker who, along with others, would receive delivery of drugs from Gutierrez on or about May 17. Police surveillance established that Gutierrez was in town on May 17, meeting with the other drug dealers named by the informant but not with Ratzlaff. The State contends that because an independent law enforcement investigation corroborated the informant's information about the drug trafficking operation, his information about Ratzlaff's involvement was verified as well. We disagree. . . .

. . . .

"In the present case, with the exception of Ratzlaff's address, the independent law enforcement investigation failed to verify the informant's information about Ratzlaff's involvement as a principal player in a drug trafficking ring or drug-related activity at his residence. To the contrary, the surveillance of defendant's residence indicated no activity at all, and law enforcement officers were aware that Ratzlaff was not in town during this period of time. There are no facts establishing probable cause to believe Ratzlaff committed a crime or that illicit drugs could be found at his residence. At best, the affidavit gives rise to a suspicion that Ratzlaff was involved in illicit drug activity and that evidence of such activity could be found in his residence. Although the evidence need not prove guilt beyond a reasonable doubt, it must constitute more than mere suspicion. *State v. Mayberry,* 248 Kan. at 376. We agree with the district court that the affidavit failed to establish probable cause for the issuance of the warrant to search Ratzlaff's residence." 255 Kan. at 749-751.

In the second case decided nearly contemporaneously with *Gilbert,* we again were faced with a situation in *Longbine* where the district judge and Court of Appeals had disagreed on the soundness of the magistrate's decision to issue a search warrant. The district court had suppressed evidence obtained pursuant to the warrant, and the Court of Appeals had reversed on the State's interlocutory appeal. *Longbine,* 257 Kan. at 715-16.

The defense specifically argued on petition for review to this court that the Court of Appeals had applied the wrong standard of review, asserting it had ignored the district judge's findings of fact and conclusions of law. The *Longbine* decision does not mention

*Gilbert*, although it references *Gates'* caution about avoiding de novo review and according great deference to the issuing magistrate. *Longbine*, 257 Kan. at 716. This nod to the reviewing court's limited role, *i.e.*, "simply to ensure the magistrate had a substantial basis for concluding that probable cause existed," *Longbine*, 257 Kan. at 716 (citing *Abu-Isb*a, 235 Kan. 851, Syl. ¶ 3), is brief. *Longbine* then cites and discusses *Ratzlaff* and quotes *State v. Vandiver*, 257 Kan. 53, Syl. ¶ 6, 891 P.2d 350 (1995), an intervening *warrantless* search case. This conflation of the standards governing a warrantless search case and a search warrant case sets up a searching examination of the "[s]ufficiency of [p]robable [c]ause [e]vidence" in the affidavit at issue in *Longbine*, where the opinion states:

"The question to be determined is whether the information in the affidavit supporting the application for a search warrant would lead a reasonably prudent person to believe that contraband would be found in the defendant's residence. See *State v. Ratzlaff*, 255 Kan. 738, 744, 877 P.2d 397 (1994).

"In *State v. Ratzlaff*, 255 Kan. at 742, this court observed that the findings of fact of the district court control and should be accepted as the basis upon which the trial court's suppression of the evidence is reviewed. It noted that the trial court determinations of fact, unappealed from, are final and conclusive. *Palmer v. State*, 10 Kan. App. 2d 656, 657, 707 P.2d 1091, *rev. denied* 238 Kan. 878 (1985). We have stated that when reviewing a trial court's suppression of evidence, the appellate courts normally give great deference to the factual findings of the trial court. Even though great deference is given to the factual findings of the trial court, the ultimate determination of the trial court's suppression of evidence is a legal question requiring independent appellate determination. *State v. Vandiver*, 257 Kan. 53, Syl. ¶ 6, 891 P.2d 350 (1995). The Court of Appeals was aware of its standard of review. The question is whether the Court of Appeals properly applied the standard of review.

. . . .

"This case is procedurally and factually similar to *Ratzlaff*, 255 Kan. 738, in that the two courts reviewed the facts stated in the affidavit and reached opposite legal conclusions. In both cases, after a motion to suppress the evidence seized had been filed, the district judge in the judicial district which issued the search warrant reviewed the affidavit and decided that the information provided in the affidavit did not constitute a substantial basis for the issuing judge to conclude that probable cause existed for issuance of the search warrant of defendant's residence. The Court of Appeals read the same affidavits and found that each of the affidavits contained sufficient information to issue a search warrant. In *Ratzlaff*, 255 Kan. at 751-55, after reviewing several recent decisions examining whether affidavits

for search warrants established sufficient information to conclude probable cause existed, the court determined the district judge did not err in (1) finding no probable cause to issue the search warrant and (2) suppressing the evidence seized.

"K.S.A.1994 Supp. 22-2502, in pertinent part, provides that a search warrant shall be issued upon oral or written application which states facts sufficient to show probable cause that a crime has been or is being committed and which particularly describes the person, place, or means of conveyance to be searched. Before a search warrant may be issued, there must be a finding of probable cause by a neutral and detached magistrate. The supporting affidavit for the search warrant must set out sufficient factual information to support an independent judgment by the magistrate that probable cause to search exists. 'Bald conclusions, mere affirmations of belief, or suspicions are not enough, and while an affidavit may be based on hearsay, there must be sufficient affirmative allegations of fact as to an affiant's personal knowledge to provide a rational basis upon which a magistrate can make a judicious determination of probable cause.' *State v. Probst,* 247 Kan. 196, Syl. ¶ 3, 795 P.2d 393 (1990).

"In determining whether to issue a search warrant, a magistrate considers the 'totality of the circumstances' presented and makes a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Abu-Isba,* 235 Kan. 851, Syl. ¶¶ 1, 2. In determining whether there is a fair probability that contraband or evidence of the crime will be found at the place to be searched, the issuing magistrate considers the lapse of time stated in the affidavit. Whether the lapse of time tends to remove all probable cause for issuance of a search warrant by destroying any reasonable belief that drugs remain on the premises depends on the facts and circumstances of each particular case. *State v. Jacques,* 225 Kan. 38, Syl. ¶ 2, 587 P.2d 861 (1978).

"The Court of Appeals was aware that the affidavit did not specifically state that drugs were stored at the defendant's residence. Aware of the deficiency, the Court of Appeals analyzed the affidavit and found that the examining magistrate had a 'substantial basis' to conclude that probable cause existed. It reached this conclusion by observing that the affidavit clearly showed that Shafer was a drug dealer with an established network. It determined that the multiple calls to known members of the drug network and to Longbine created the 'impression that Longbine was an integral part of Shafer's network.' It concluded that the 'impression' that Longbine was an integral part of Shafer's network was specifically substantiated and validated by the fact that Shafer and Longbine were overheard discussing the details of a drug transaction.

"The Court of Appeals, after concluding there was an impression that Longbine was a member of Shafer's organization, observed that Shafer's practice of storing drugs with the members of his network was firmly established by the affidavit. Therefore, the court concluded, 'because Longbine appeared to be a part of Shafer's network that drugs would be stored at his residence or that drugs were in

Longbine's possession.' The Court of Appeals determined under its standard of review that 'it is clear that the judge issuing the search warrant had a substantial basis from the affidavit to conclude that probable cause existed, and the ruling of the trial court suppressing the evidence must be reversed.'

"We agree with the Court of Appeals' conclusion that the affidavit sets forth extensive information indicating Shafer was a drug dealer with an established network, that he stored marijuana at his associates' houses, and that numerous persons in the Salina area sold the marijuana for him. We note as to Longbine, examination of the affidavit reveals that: (1) numerous calls were made from Shafer's residence to the residence of defendant; (2) over a 12-day period, officers intercepted and recorded hundreds of Shafer's incoming and outgoing calls, some of which (no number was stated) were to and from Longbine, discussing the amount of drugs available for purchase, prices, meeting places, and times; and (3) 15 days prior to obtaining the search warrant, officers overheard a conversation between Shafer and defendant. During that conversation the language and terminology used made it apparent to the officers that Shafer and defendant were discussing a drug transaction. Whether the transaction was a past or future transaction or involved Longbine or Shafer was not stated in the affidavit.

"After reviewing the evidence stated in the affidavit, we agree the issuing magistrate could find the affidavit created an 'impression' that the defendant was part of Shafer's network. The question is, based on this impression, can the reviewing authority conclude that it follows that Longbine, if a member of Shafer's organization, has contraband stored in his residence. In *State v. Mitchell*, 8 Kan. App. 2d 416, Syl., 658 P.2d 1063 (1983), the Court of Appeals determined that an affidavit for a search warrant which states only that a 'controlled purchase' of narcotic 'was made from the occupant' of suspected premises is insufficient to support a finding of probable cause to believe there were narcotics on the premises. If the *Mitchell* court is correct, it follows that an affidavit for a search warrant that gives an impression but fails to state facts that support probable cause to believe that contraband will be found at the place to be searched is insufficient to buttress a finding of probable cause by the issuing magistrate.

"The supporting affidavit for the search warrant must set out sufficient factual information to support an independent judgment by the magistrate that probable cause exists that a crime has been or is being committed and there is a fair probability that contraband or evidence of a crime will be found in a particular place described in the application and affidavit for the search warrant. The district judge correctly determined that the affidavit failed to state a fair probability that the contraband would be found at Longbine's residence." *Longbine*, 257 Kan. 716-20.

We engage in this extensive reexamination of *Ratzlaff*, *Gilbert*, and *Longbine*, all decided within 1 year, to demonstrate that they defy easy synthesis on the standard of review needed here. Still,

certain parameters remain clear and others constitute reasonable extrapolations from these precedents.

First, the formula for evaluating the decision of an issuing magistrate from the United States Supreme Court's *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), remains good law. See, *e.g.*, *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996) (*rulings on warrantless searches* demand de novo review of reasonable suspicion, probable cause determinations; less rigorous standard of review applies to magistrate's *decision to issue warrant* for search; differential provides incentive for law enforcement officers to seek warrants); *United States v. Leon*, 468 U.S. 897, 915, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984); Criminal Procedure Review Project, *The Warrant Requirement*, 85 Geo. L. J. 832, 835 & n.68 (1997) (most federal circuit courts of appeal apply *Ornelas'* de novo standard of review only when search was without warrant). We note in particular that the Tenth Circuit Court of Appeals continues to give great deference to a magistrate's assessment of the strength of an affidavit in support of a search warrant, asking only, as *Gates* instructs, whether the issuing magistrate had "a substantial basis for determining probable cause existed." *United States v. Soderstrand*, 412 F.3d 1146, 1152-53 (10th Cir. 2005); see *Mack v. City of Abilene*, 461 F.3d 547, 551 (5th Cir. 2006); *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006); *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006); *United States v. Goff*, 449 F.3d 884, 886 (8th Cir. 2006); *United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005).

The Tenth Circuit also is among those courts careful to differentiate between the standard of review applied by a court reviewing a magistrate's early estimate of probable cause and an appellate court's later review of a district judge's second look at the magistrate's decision. *Soderstrand*, 412 F.3d at 1152-53. As the Third Circuit Court of Appeals has expressed it:

"When a district court, in reviewing a magistrate's determination of probable cause, bases its probable cause ruling on facts contained in an affidavit, we exercise plenary review over the district court's decision. [Citations omitted.] . . .

"In contrast, both we and the district court exercise only a deferential review of the *initial* probable cause determination made by the magistrate. [Citations omitted.] . . . Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,' a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." *United States v. Conley*, 4 F.3d 1200, 1204-05 (3d Cir. 1993).

These federal court decisions are consistent with recognition of a difference in the standard of appellate review for warrantless search cases such as *Vandiver* 257 Kan. 57, and search warrant cases such as *Ratzlaff*, 255 Kan. 738, *Gilbert*, 256 Kan. 419, and *Longbine*, 257 Kan. 713. The *Longbine* decision was in error when it cited *Vandiver* for the proposition that "[e]ven though great deference is given to factual findings of the trial court, the ultimate determination of the trial court's suppression of.evidence is a legal question requiring independent determination." *Longbine*, 257 Kan. at 717. Although this dual fact/law standard is employed when there has been a warrantless search, or, for example, when the voluntariness of a confession must be determined, see, *e.g.*, *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006), this is not the applicable standard when a reviewing court evaluates a magistrate's decision to issue a search warrant on the basis of an affidavit. Deference is the overarching principle in such a case.

Yet deference does not tell the whole story. When a case is in the posture of this case, that is, when the content of the affidavit supporting the application for a warrant is necessarily undisputed, and the record on appeal contains no hint that the magistrate had any other information before him or her to support the issuance of that warrant, the appellate court is in the same position as the issuing magistrate. It is just as capable of analyzing whether the *Gates* level of proof is demonstrated by the affidavit, *i.e.*, whether the magistrate had a substantial basis for concluding that probable cause existed. Our approach in *Gilbert* can be reconciled with our approach in *Ratzlaff* and *Longbine* if we appreciate that all of the "deference" due the magistrate is inherent in the *Gates* level of proof. The phrase "substantial basis" is inherently deferential. Our inquiry is not whether we, as judges, can conclude as a matter of

law that probable cause actually existed. We may conduct an independent analysis of the content of the affidavit, but we need only see enough to persuade us that there was a substantial basis for the magistrate's conclusion. See *Gates*, 462 U.S. at 238-39; *Conley*, 4 F.3d at 1205. This is probable cause at least once removed; *i.e.*, deference is built into *Gates'* wording of the "substantial basis" standard.

This built-in deference furthers appropriate role allocation and incentive.

From a role allocation standpoint, it is the issuing magistrate in the first row of the front lines. He or she is the person who typically must make a fast decision on less than perfect information, sometimes in the middle of the night. A district judge considering a later motion to suppress based on a magistrate's probable cause determination, as well as a panel of appellate judges, have the twin advantages of time and presumably competent advocacy from both sides of the case when they make their decisions. It is appropriate that they defer.

In terms of incentive, we recognize the wisdom of *Gates*. Reviewing court deference to a magistrate's decision to issue a warrant gives an incentive to law enforcement to seek the warrant in the first place. If we reviewed search warrant cases as skeptically as we review warrantless search cases, that incentive would evaporate, serving no one.

Therefore, notwithstanding the sometimes varying language employed in our previous opinions, we reaffirm that the *Gates* standard is the appropriate one to apply when an affidavit in support of an application for search warrant is challenged, and this inherently deferential standard requires the reviewing court to determine whether the affidavit provided a substantial basis for the magistrate's determination to issue the warrant.

*Evaluation of Affidavit*

In making the determination whether to issue a search warrant, a magistrate considers the totality of the circumstances presented and makes a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair prob-

ability that contraband or evidence of a crime will be found in a particular place. *Gates,* 462 U.S. at 235-36; *Longbine,* 257 Kan. at 718; *Gilbert,* 256 Kan. at 421-22; *Abu-Isba,* 235 Kan. 851, Syl. ¶ ¶ 1, 2. Bald conclusions, mere affirmations of belief, or suspicions are not sufficient to support a finding of probable cause. *Probst,* 247 Kan. at 202. Further, while an affidavit may be based on hearsay, there must be sufficient affirmative allegations of fact as to an affiant's personal knowledge to provide a rational basis upon which a magistrate can make a determination of probable cause. *Longbine,* 257 Kan at 718; *Probst,* 247 Kan. 196, Syl. ¶ 3; *State v. Morgan,* 222 Kan. 149, 151, 563 P.2d 1056 (1977).

In the affidavit before us, there were essentially four different categories of information, four different elements. We explore each in turn. The first element was composed of complaints from "concerned citizens." These complaints were at least hearsay, and some may have qualified as double hearsay, having come to officers other than the affiant. Hearsay is acceptable in such affidavits, but among the circumstances to be considered by the magistrate in determining whether probable cause exists to support a search warrant are the "veracity" and the "basis of knowledge" of any person providing hearsay information. *Gates,* 462 U.S. at 236-39; *State v. Prewett,* 236 Kan. 39, 46, 785 P.2d 956 (1990). Concern over these considerations falls by the wayside if "an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him [or her] to criminal liability." *Gates,* 462 U.S. at 233-34 (citing *Adams v. Williams,* 407 U.S. 143, 146-47, 32 L. Ed. 2d 612, 92 S. Ct. 1921 [1972]); see *State v. Slater,* 267 Kan. 694, 700, 986 P.2d 1038 (1999) ("[T]he most favored of the tips are those which are in fact not really anonymous at all. These tips occur when the person giving the tip gives the police his or her name and address or identifies himself or herself in such a way that he or she can be held accountable for the tip."); *City of Pratt v. Stover,* 272 Kan. 279, 32 P.3d 1143 (2001) (drunk driving tip from person who gave her name, address to police dispatcher); *Prewett,* 246 Kan. at 46-47 (information supplied by a named employee of hospital); *State v. Hays,* 221 Kan. 126, 129, 557 P.2d 1275 (1976) (reliability of identified citizen informer need not be

established in same manner as that of unidentified informant); *State v. Musick*, 30 Kan. App. 2d 76, 78, 38 P.3d 144, *rev. denied* 273 Kan. 1039 (2002) (informants who supplied police with their names, addresses, and enough information to make it clear they had firsthand knowledge of defendant's activities considered reliable); see also *United States v. Downes*, 2001 WL 121951 (D. Kan. unpublished opinion filed January 12, 2001) (citizen informant identified by name with first-hand knowledge of wrongdoing entitled to presumption of reliability without corroboration).

Here the affidavit does not identify the concerned citizens who complained about defendant to Hoisington police. We do not know whether the police had reason to believe the citizens were honest. The only language in the affidavit that could lead to the conclusion they were knowledgeable are two references to their status as Hicks' neighbors. We do not know when the observations were made, or when they were reported. We also do not know how many citizens there were. The affidavit refers to at least two, but is non-specific. The affidavit also does not state whether the complaints from concerned citizens were independent of each other. If so, they could be characterized as mutually corroborative. If they were not independent, they may not be fairly described as corroborative.

An absence of police verification for the concerned citizens' complaints also is significant.

"When an affidavit for a search warrant is founded upon information from an unidentified informant, . . . [t]he probable cause determination . . . must be supported by some indication that the informant's information is accurate. Therefore, the veracity and basis of knowledge of the confidential informant must be considered as part of the substantial basis for finding probable cause." *State v. Shively*, 26 Kan. App. 2d 302, Syl. ¶ 4, 987 P.2d 1119 (1999), *aff'd* 268 Kan. 589, 999 P.2d 259 (2000).

Allegations without factual support should not be considered in determining whether probable cause existed to issue a search warrant. *Littrice v. State*, 31 Kan. App. 2d 846, 851, 75 P.3d 292, *rev. denied* 276 Kan. 969 (2003). Although the affidavit tells us that police began surveillance of Hicks' residence after the complaints from concerned citizens came in, there is nothing in the affidavit saying police observed any activities to confirm those citizens' com-

plaints. If police saw Hicks change colored lightbulbs on his porch, prompting increased traffic at his residence, or they detected marijuana smoke emanating from his home, the affidavit does not say so.

The next element of the affidavit concerns visitors to Hicks' residence and their past involvement with drugs. The affidavit says that police over the "past several weeks," observed three individuals "arrive" or "show up" at Hicks' house. Two of these three had a prior drug-related arrest and/or conviction, one of them 3 years before and the other 1 year before. One of these individuals visited the residence two times in 1 day. The other visited the house twice in 2 weeks.

We first observe that these spotty police observations do not confirm the citizens' complaint of "a lot of people coming and going." This handful of visits certainly did not constitute a "protracted or continuous course" of traffic indicating drug-related activity. See *State v. Jacques*, 225 Kan. 38, 42, 587 P.2d 861 (1978). The visitors' criminal histories can be relevant in the totality of the circumstances, and a seemingly innocent activity can become suspicious in light of a reliable tip or independent police investigation, see *Gates*, 462 U.S. at 243-46 & n.13, but we discern no particular relevance here. At least one of the visitors' criminal histories was stale; there was no evidence that either visitor carried a suspicious package in or out of the residence or that Hicks was even home or aware of the visits at the times they occurred.

The third element of the affidavit consists of Hicks' drug history. This element is extremely stale and cannot, without more, provide a basis to believe drugs would be found at the residence. Hicks' three convictions ranged in time from 1975 to 1997—28 years to 6 years before the affidavit was filed.

The only other element of inculpatory information in the affidavit came from the results of two trash pulls from the alley behind Hicks' residence. On each of two successive Mondays, the normal days for trash pickup, 10 days and 3 days before the affidavit was filed, officers seized a bag from this location. The affidavit states without explanation that the place from which the bags were seized was "the normal place" Hicks placed his trash for pickup. Each

bag contained drug evidence. The affidavit is silent on whether either or both bags contained any indices of Hicks' residency, *i.e.*, anything tying their contents to him, such as a billing or bank statement containing his name and address. The affidavit also does not say Hicks was observed placing either or both bags in the alley. Generally, some evidence establishing a nexus between drug evidence discovered in a garbage bag and a residence to be searched is necessary to support the conclusion that the drug evidence came from the home. We note that this requirement has been consistently applied by our Court of Appeals. See, *e.g.*, *State v. Droge*, No. 92,501, unpublished opinion filed February 25, 2005. The affidavit in this case falls short in this respect as well.

Even when we view the affidavit at the heart of this case in the context of the totality of the circumstances and keep in mind our *Gates* obligation of deference to the issuing magistrate, we simply cannot conclude that the magistrate had enough before him to establish a substantial basis for the existence of probable cause. The parts are weak, and the whole is not greater than the sum of them. Although it is possible that the concerned citizens were not anonymous to the police, or, if so, that they were nevertheless worthy of trust and their complaints accurate and corroborated, the affidavit did not say so. Although the two visitors to Hicks' home may have had more recent drug abuse and distribution histories and more numerous or more frequent visitors with similar pasts may have congregated at the house, the affidavit did not say so. Although the affiant may have based his assertion that the trash pulls came from the normal place Hicks left his trash for pickup on his own or others' observation of Hicks' behavior or on indices of residency in the bags, the affidavit did not say so. With none of this information, the affidavit did not provide a substantial basis for a fair probability that evidence of crime would be found in Hicks' residence.

### Application of Good Faith Exception

Had the State pursued an argument regarding application of the *Leon*, 468 U.S. 897, good faith exception to the exclusionary rule, we would have entertained it on the merits. However, to his credit

as a professional, the prosecutor acknowledged at oral argument before us that he had not argued *Leon*'s applicability to save this search. Indeed, he was reluctant to address its potential applicability, even when asked to do so directly. Under these circumstances, we regard the *Leon* argument as waived and leave to another day further discussion of how *Leon* does or does not come into play in a case such as the one before us.

The Court of Appeals is reversed; the district court is affirmed. The case is remanded for further proceedings consistent with this opinion.

ALLEGRUCCI, J., concurring in the result of the foregoing opinion.