NOT DESIGNATED FOR PUBLICATION

No. 119,802

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL SKY SUMMERS,
a/k/a SKY MICHAEL SUMMERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed September 20, 2019. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Keith E. Schroeder*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and WARNER, JJ.

PER CURIAM:  Michael Sky Summers appeals his convictions for possession of methamphetamine, marijuana, and drug paraphernalia. Summers challenges the trial court's denial of his motion to suppress evidence discovered after firefighters broke into a padlocked room in his home while fighting a fire. Summers argued at trial that the probable cause affidavit used to obtain a warrant for his home contained material misstatements. He also argued that there was no exception to the warrant requirement that would justify the firefighter's entry into the padlocked room. The trial court denied the

1

motion to suppress, finding that the affidavit contained sufficient information of probable cause even after removing the misstated information, but made no findings related to the warrantless entry. Because we find that the firefighters lawfully entered the padlocked room and the affidavit contained no material misstatements, we affirm.

FACTUAL AND PROCEDURAL HISTORY

On a summer evening in June 2017, officers from the Reno County Police Department responded to a dispatch to assist with a fire at a mobile home in rural Reno County. Officers identified Summers as one of its occupants. Upon Deputy Christopher Shields' arrival, Firefighter Johnny Likes informed Shields that he discovered "what appeared to be drug paraphernalia[, including a] Pipe (glass) along with needles in plain sight on the table" inside a locked room within the residence.

Likes reentered the residence with Shields and entered the room that had been locked, where Shields personally observed syringes, pipes, and marijuana on the same table. Shields secured the house and did not permit the occupants to enter while he applied for a search warrant. Another deputy read Summers a form explaining his *Miranda* rights, and Summers initialed the form and agreed to speak with the officers. Summers told the officers they would find about $10 worth of methamphetamine and pipes in the house and that he was a daily smoker of marijuana. He admitted the drugs were his.

At around 11 p.m., Shields executed the search warrant. During the search, he found items consistent with the use of methamphetamine in the locked room that appeared to be Summers' "'man cave,'" including: grinders, two glass pipes with white residue, "one hitter" pipes with burnt residue, a syringe with what appeared to be blood on the needle, two other syringes, and a spoon with white residue. He also found

2

marijuana, one hitter pipes with residue, and a pocket scale in the living room. The officers placed Summers under arrest.

The State formally charged Summers with possession of methamphetamine, possession of marijuana with two or more prior convictions, and possession of drug paraphernalia. Summers pled not guilty to the charges.

Before trial, Summers moved to suppress the evidence obtained as a result of the search warrant as well as the statements he made to the officers. Summers argued that the affidavit in support of the search warrant contained material misstatements and omissions. First, it omitted that the firefighters broke into the room without permission. Second, although the probable cause affidavit stated that Likes found a table covered in syringes, pipes, and marijuana, Likes' witness statement said that he found "what appeared to be drug paraphernalia[, including a] Pipe (glass) along with needles in plain sight on the table" with no mention of any drugs. Summers also denied that officers ever asked the occupants if they were diabetic and argued that he only admitted that officers would find pipes and methamphetamine in his house after he faced a prolonged detention and his residence was illegally searched. Summers finally argued that neither the exigent circumstances nor the emergency aid exception applied in this circumstance to justify the warrantless search of the locked room by the firefighters.

At a hearing on the motion to suppress, the trial court found that the probable cause affidavit misstated Likes' witness statement, but that the affidavit was still sufficient to show probable cause for the search warrant. The trial court explained it was sufficient "primarily because Deputy Shields apparently viewed the illegal items and he does state that he confirmed those items were in the room after he viewed them." The trial court made no factual findings relating to the firefighters' warrantless entry into the home.

At the next hearing, Summers waived his right to a jury trial and submitted a stipulation of facts to the trial court. The court reviewed the stipulation of facts and found Summers guilty on all three counts.

Summers appeals.

## THE AFFIDAVIT FOR THE SEARCH WARRANT

Summers argues that the affidavit for the search warrant misstated a witness statement and that after removing the erroneous statements from the affidavit, it contained insufficient information to support a showing of probable cause. The State disputes that the search warrant affidavit contained material misstatements of fact and asserts that probable cause existed even after striking the alleged erroneous portions from the affidavit.

*Our standard of review is examined.*

In reviewing whether an affidavit in support of a search warrant supplies probable cause, a judge must consider the totality of the circumstances presented and make "'a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016). But when reviewing a challenge to the affidavit in support of an application for a search warrant, the reviewing court uses a deferential standard and must ensure the issuing magistrate had "'a substantial basis for concluding probable cause existed.'" 304 Kan. at 353. Our review is not de novo. Although we are able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate and we may perform our own evaluation of the affidavit's sufficiency, we must use a deferential standard. *State v. Hicks*, 282 Kan. 599, 612-13, 147 P.3d 1076 (2006). In other words, "we need only see

4

enough to persuade us that there was a substantial basis for the magistrate's conclusion." 282 Kan. at 613; see also *Mullen*, 304 Kan. at 353. The *Hicks* court described this as "probable cause at least once removed." 282 Kan. at 613.

We are to presume an affidavit in support of a search warrant is valid. *State v. Adams*, 294 Kan. 171, 178-79, 273 P.3d 718 (2012). If a defendant submits certain evidence challenging the factual basis for a search warrant, the trial court must conduct what is known as a *Franks* hearing. See *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). A *Franks* hearing is required if a defendant shows by a sworn allegation that an affidavit in support of a search warrant is unreliable in that it: "(1) contains statements that are material to the issuance of the search warrant because the statements were necessary to find probable cause and (2) the material statements (a) were a deliberate falsehood, (b) were made in reckless disregard for the truth, or (c) deliberately omitted a material fact." *Adams*, 294 Kan. at 179; see *Franks*, 438 U.S. at 171-72.

Here the parties describe the hearing challenging the probable cause affidavit as a *Franks* hearing. When reviewing a *Franks* hearing, this court reviews whether the trial court's findings are supported by substantial competent evidence. *State v. Francis*, 282 Kan. 120, 129, 145 P.3d 48 (2006).

*There was substantial competent evidence to conclude that probable cause existed to issue a warrant for Summers' home.*

A defendant challenging an affidavit must specifically point out the alleged false or omitted information, and then the trial court must determine whether probable cause exists without the questionable statements or exclusions. "If probable cause can be found without the excised statements, no evidentiary hearing is required." *Adams*, 294 Kan. at 179. That is exactly what the trial judge did here.

5

Here, the trial court agreed that there was a discrepancy between the firefighter's written statement and the probable cause affidavit. Likes specifically only wrote about seeing "what appeared to be drug paraphernalia," including a glass pipe and needles. The affidavit said that Likes noticed "syringes, pipes, *and marijuana*" on the table in the room. (Emphasis added.) That said, the trial court—without making a finding that the challenged portion of the affidavit was a material fact or was deliberately false or showed a reckless indifference to the truth—considered the affidavit without the challenged portion and found that that even if it excluded that information the affidavit was sufficient to support the search warrant. Based on *Adams*, there was no need for any *Franks*-style hearing. *Adams*, 294 Kan. at 180.

But Summers contends that striking the misstatements from the affidavit leaves no facts in the affidavit to support probable cause, thus the misstatement was material. He argues that without the statement that Likes saw *drugs* on the table in the padlocked room, the only other significant information in the affidavit is that Likes saw a glass pipe and needles in plain view and that Shields has training and experience that allow him to associate glass pipes and syringes with methamphetamine and marijuana use. According to Summers, Shields lacked probable cause because he did not specifically observe an odor of drugs, items to store drugs or make them, or any other related evidence.

The State responds that probable cause existed even without the alleged misstatements because Shields personally viewed the drugs and drug paraphernalia. The State also points out that the trial court did not find that the statements in the affidavit were a deliberate falsehood or made in reckless disregard for the truth. We agree. The judge simply found that if she extricated the *alleged* false or misleading or incomplete statement the affidavit was sufficient.

We agree with the State that Summers fails to show that the affidavit lacked sufficient information to support probable cause for the search warrant.

6

"Probable cause for a search requires the presence of information which would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence of the crime may be found on a particular person, in a specific place, or within a specific means of conveyance." *State v. Mell*, 39 Kan. App. 2d 471, 482, 182 P.3d 1 (2008).

We find that the affidavit at issue here contains sufficient evidence to support the magistrate's probable cause determination for the following reasons.

First, Summers makes no argument, nor did he present any evidence to the trial court that the affidavit contained a *deliberate* falsehood or that Shields acted in reckless disregard for the truth. Summers' affidavit in support of suppression simply denied that there was contraband in plain view in the locked room. Although Shields attributed the statements regarding marijuana to Likes, Shields stated in the affidavit that his own observations confirmed that those items were in the room. That Shields mixed up what he saw and what Likes saw seems to be more in line with a finding of negligence or innocent mistake, which are not sufficient to invalidate a search warrant. See *Franks*, 438 U.S. at 171. And Summers failed to present sufficient evidence to support a different conclusion. Although the trial judge made no specific finding that the statements in the affidavit were deliberately false or reckless, such a finding would not be supported by the evidence.

Second, Summers provides no legal authority to support his contention that viewing items known to be used to ingest marijuana or methamphetamine is not sufficient to support a probable cause finding for a search warrant. Failure to provide pertinent authority is akin to failing to brief and will be deemed abandoned. *State v. Pewenofkit*, 307 Kan. 730, 731, 415 P.3d 398 (2018). Courts have consistently found that finding drug paraphernalia leads to probable cause to further search for more drug paraphernalia—the possession of which is illegal—and drugs. See *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999) (officers had probable

7

cause to believe there were illegal drugs in the car when hypodermic syringe found in driver's pocket); *State v. Boyd*, 275 Kan. 271, 276, 64 P.3d 419 (2003) ("There seems to be no question that, once the officer found a crack pipe in [the driver's] vehicle, he had probable cause to believe that illegal drugs would be found there."); *State v. Knight*, 55 Kan. App. 2d 642, 648-49, 419 P.3d 637 (2018) (glass pipe in waistband provided sufficient probable cause to search car). Because observing drug paraphernalia in plain view can support a finding of probable cause for a search, this fact supports the magistrate's probable cause finding.

Third, Summers fails to challenge the portion of the affidavit explaining that Summers voluntarily admitted to another officer that the room contained two pipes used to smoke methamphetamine and a small amount of methamphetamine, both of which he admitted belonged to him. In fact, this evidence was part of the joint factual stipulation entered prior to Summers' bench trial. An admission by the resident of the house that drugs and drug paraphernalia would be found in the house supports the magistrate's probable cause finding.

Finally, Summers fails to challenge the portion of the probable cause affidavit that indicates that Summers' wife, who was also living in the mobile home, told officers that Summers was addicted to methamphetamine and kept marijuana and methamphetamine in the locked room. An admission by someone who lives in the house that drugs and drug paraphernalia would be found in the house supports the magistrate's probable cause finding.

For these reasons, we conclude that there was substantial competent evidence to support the trial court's determination that the search warrant was sufficient even without the challenged portions. We also conclude that the affidavit provided the magistrate with a substantial basis to conclude that probable cause existed to search Summers' home with or without the challenged information.

Summers argues that neither the firefighters nor the police officers had a valid reason to enter the padlocked room without a warrant, and thus the court should have suppressed any evidence obtained as fruit of the poisonous tree. He contends that the community caretaking and emergency aid exceptions are the only possible exceptions to the warrant requirement that could apply in this situation.

The State counters that exigent circumstances justified the firefighters' entrance into the mobile home and the locked room. The State also asserts that Likes discovered the potentially illegal items while investigating the fire and promptly informed the police. As a result, the State did not violate Summers' rights because the firefighters could have lawfully seized the items once discovered.

At the outset, it is important to recognize the full extent of Summers' argument on this issue. In his motion to suppress, Summers' only challenge related to the firefighters' warrantless entry into the locked room. But the facts suggest that there were three separate entries into his home: (1) the firefighters entered his home without a warrant to fight the fire; (2) after extinguishing the fire, Likes reentered the home with Shields, again without a warrant, to view the drug paraphernalia; and (3) Shields and other officers entered the home to execute the search warrant.

For the first time on appeal, Summers is challenging the reentry into the locked room by Likes and Shields, the second entry of the three noted. Appellants must explain in their brief why an issue not raised before the trial court should be considered for the first time on appeal. Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). Failure to comply with this rule constitutes failure to properly brief an issue, and this court can consider it to be waived or abandoned. See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Because Summers did not raise the issue before the trial court and fails

to comply with Rule 6.02(a)(5) on appeal, we deem it waived and abandoned and will not address it here.

Although Summers challenges the issuance of the warrant, he does not argue that there was anything unlawful about the officers entering his home to execute the warrant. So we are left with Summers' claim that the firefighters had no right to enter the locked room without a warrant.

*Our standard of review is unlimited.*

Because the facts are not in dispute—in fact there was a joint stipulation entered regarding the facts—the suppression issue "simply presents a question of law subject to de novo review." *State v. Parker*, 309 Kan. 1, 5, 430 P.3d 975 (2018). The State has the burden to show that a search and seizure was lawful. *State v. Johnson*, 293 Kan. 1, 4, 259 P.3d719 (2011). Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

*The firefighters lawfully entered the padlocked room while performing duties related to fighting the fire and investigating its cause.*

The law regarding firefighters entering buildings to extinguish fires is clear. "A burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze." *Michigan v. Clifford*, 464 U.S. 287, 293, 104 S. Ct. 641, 78 L. Ed. 2d 477 (1984). Moreover, "once in the building, officials need no warrant to *remain* for 'a reasonable time to investigate the cause of the blaze after it has been extinguished.'" 464 U.S. at 293 (quoting *Michigan v. Tyler*, 436 U.S. 499, 510, 98 S. Ct. 1942, 56 L. Ed. 2d 486 [1978]). The Court recognized that firefighters may come across contraband in plain view while fighting and investigating fires. "In searching solely to

10

ascertain the cause, firemen customarily must remove rubble or search other areas where the cause of fires are likely to be found. An object that comes into view during such a search may be preserved without a warrant." 464 U.S. at 295, n.6; see also *United States v. Finnigin,* 113 F.3d 1182, 1186 (10th Cir. 1997) (firefighters legally discovered explosive devise after moving some debris); *State v. Collins*, No. 105,701, 2012 WL 98494, at *5 (Kan. App. 2012) (fire investigators can search any area, even if not in plain view to find cause of fire).

So while Summers may be correct that he had a reasonable expectation of privacy in the padlocked room, the firefighters were still justified in entering that room. They were fulfilling their intended purpose:  extinguishing the fire and searching for additional evidence of fire damage or remaining occupants. Furthermore, the firefighters could have seized the items they believed to be drug paraphernalia without obtaining a warrant because they were discovered in plain view while fighting and investigating the fire itself. The trial court did not err when denying Summers' motion to suppress.

Affirmed.