IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,468

STATE OF KANSAS,
*Appellee*,

v.

JORDAN A. MULLEN,
*Appellant.*

SYLLABUS BY THE COURT

1.

When a trial court chooses to address an issue not raised by the parties, an appellate court may address the issue as well.

2.

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." Section 15 of the Kansas Constitution Bill of Rights provides the same protections.

3.

When evidence is illegally obtained, its suppression may be warranted under the exclusionary rule, which is a judicially created rule that safeguards against unconstitutional searches and seizures by suppressing illegally seized evidence as a deterrent to future violations.

1

4.

A judge deciding whether an affidavit supplies probable cause for a search warrant considers the totality of the circumstances presented and makes a practical, common-sense decision whether there is an adequate showing that a crime has been or is being committed and there is a fair probability that contraband or evidence of a crime will be found in a particular place.

5.

When an affidavit in support of an application for a search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed.

6.

An anticipatory warrant is a warrant based upon an affidavit showing probable cause that upon the happening of some future event (*i.e.*, a triggering condition), certain evidence of a crime will be located at a specified place.

7.

For an anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied: (1) If the triggering condition occurs, there is a fair probability that contraband or evidence of a crime will be found in a particular place; and (2) there is a fair probability that the triggering condition will occur. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable cause determination.

8.

When an anticipatory search warrant covering a place is triggered upon the "controlled delivery" of contraband to that location, the means employed to deliver the

contraband must (1) be performed under the control and supervision of law enforcement officers and (2) establish a fair probability that the contraband will be found inside the location upon execution of the search warrant.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 514, 348 P.3d 619 (2015). Appeal from Johnson District Court; JOHN E. BENNETT and JANICE RUSSELL, judges. Opinion filed April 22, 2016. Judgment of the Court of Appeals is affirmed. Judgment of the district court is affirmed.

*Joanna Labistida*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Steven J. Obermeier,* assistant district attorney, argued the cause, and, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Jordan Mullen filed a motion to suppress evidence resulting from a search of a house where he was staying in Shawnee, Kansas. The search was conducted pursuant to an anticipatory search warrant which purported to give law enforcement authority to search the house once a suspicious package—addressed to the house in Shawnee and likely containing illegal drugs—was successfully delivered to a resident of the house. The district court denied Mullen's motion to suppress, concluding that the search warrant was supported by probable cause and that the event triggering the warrant's execution occurred when Mullen, under the surveillance of law enforcement, retrieved the package from the front porch and brought it inside the home. The Court of Appeals agreed and affirmed the district court's decision regarding the search warrant and its execution. See *State v. Mullen*, 51 Kan. App. 2d 514, 348 P.3d 619 (2015). This court granted Mullen's petition for review challenging the Court of Appeals decision. We affirm.

3

FACTS

On November 8, 2011, Steve Hahne, a detective with the special investigations unit of the Shawnee Police Department, prepared an affidavit in support of a search warrant for a home located in Shawnee, Kansas. Within the affidavit, Hahne stated the following pertinent facts:

"1.     11/08/2011, the Affiant was contacted by Detective Shaun Miller of the Shawnee Police Department's Special Investigations Unit. Detective Miller was contacted on the telephone by United States Postal Inspector Justin Lewis. Postal Inspector Lewis reported while he was checking mail on today's date at the Kansas City, Missouri processing and distribution center located at 1700 Cleveland Ave., he saw a box addressed to a name that was un-readable at 5807 Meadowsweet Lane, Shawnee, Kansas. Inspector Lewis checks mail randomly in order to intercept contraband being delivered via United States Postal Service. The box weighs 5 lbs. 12.6 ounces. The package originated from a U.S. Post Office located in Oakland, California. The return address on the package is also from Oakland, California. The Affiant knows through his training and experience that California is a source state of high grade marijuana as well as other illicit substances.

"2.     A computer check revealed 5807 Meadowsweet Shawnee; Johnson County, Kansas is occupied by a David B. Grooms, w/m, 01/04/1967 and a Jacob R. Grooms, w/m, 06/05/1993.

"3.     The parcel from the sort was placed with other unrelated parcels. Kansas City Missouri Police Officer Canine Handler Antonio Garcia directed K-9 Franz to the packages. Upon K-9 Franz coming into contact with the parcel, K-9 Franz sat alerting to the odor of narcotics in or about the parcel. The parcel was then taken into the custody of The Kansas City, Missouri Police Department, until a search warrant could be obtained.

4

"4.     K-9 Franz is a 7 year old German shepherd and is trained and certified to alert to the odors of marijuana, cocaine, methamphetamine, and heroin. K-9 Franz has assisted in the seizure of 4,641.4 pounds of marijuana, 75.8 pounds of cocaine, 13 pounds of Methamphetamine, 23.3 pounds of Heroin, and $1,845,686.00 in U.S. currency.

"5.     The Affiant knows that U.S. Postal Service Inspector Justin Lewis will attempt to deliver the package to a resident of 5807 Meadowsweet Lane, Shawnee, Johnson County, Kansas. *Based on the successful controlled delivery to a resident, the Affiant is requesting permission to execute this warrant at 5807 Meadowsweet Lane, Shawnee, Johnson County, Kansas. Should the delivery not be made, this warrant will not be executed*." (Emphasis added.)

Based on these facts, a district court judge signed a search warrant for 5807 Meadowsweet Lane, authorizing law enforcement to search the home for evidence of illegal drugs.

That same day, Hahne, along with other members of the special investigations unit, set up a surveillance of the home. At approximately 1 p.m., Inspector Lewis, dressed as a mail carrier and driving a postal vehicle, arrived at the residence with the package. Lewis knocked on the front door and announced, "Post Office," but no one answered. After waiting about a minute, Lewis set the package down by the front door (the package's sender did not require a signature for delivery) and left in the postal vehicle. At 1:06 p.m., an individual, later identified as Mullen, came out of the house through the front door, retrieved the package, and went back inside.

At 1:17 p.m., law enforcement entered the home and found only Mullen inside the house. The package, still unopened, was lying on the kitchen countertop. Law enforcement opened the package and discovered marijuana inside (the Johnson County Crime lab later confirmed that the package contained 896.1 grams of marijuana). After

5

being apprised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), Mullen told Hahne that he had recently begun staying at the house and had agreed to be there that day so he could bring the package inside the house once it arrived in the mail. Mullen was then supposed to watch over the package until one of three people (Alex Firth, Noah Schrader, or Jacob Grooms) arrived at the house to retrieve it. Mullen admitted to knowing that the package contained marijuana.

Mullen was ultimately charged with possession of marijuana with the intent to distribute. Mullen filed a motion to suppress the marijuana as well as his statements to the police, arguing that the triggering event within the anticipatory search warrant (*i.e.*, "the successful controlled delivery to a resident" of the home) required Lewis to hand deliver the package to a resident of the home. Mullen contended that because Lewis simply left the package on the front porch, a controlled delivery never occurred and, consequently, law enforcement acted in violation of the search warrant when they entered the home after Mullen retrieved the package.

The State argued that a controlled delivery did occur because, once the postal inspector left the package on the front porch, the package remained under the constant surveillance of law enforcement until Mullen eventually brought the package inside the home. Thus, according to the State, law enforcement acted properly in executing the search warrant.

At the hearing on the motion to suppress, Detective Hahne stated that the warrant's triggering event required that the package, while under the surveillance of law enforcement, be delivered to the home and that the package be taken inside the home by a resident. Though he had agreed with defense counsel's statement at Mullen's preliminary hearing that a "controlled delivery" would require handing the package to a resident of the home, Hahne indicated at the suppression hearing that a controlled delivery was

6

accomplished in this case when Mullen, under the law enforcement surveillance, retrieved the package from the front porch and brought it inside the home.

At the conclusion of the hearing, the district court reserved ruling on whether a controlled delivery occurred and asked for supplemental briefing on whether probable cause to search a home for illegal drugs is established merely because a resident of the home brings a package—mailed to the residence and likely containing illegal drugs—into the home. At a subsequent hearing, the district court ruled that the search warrant was supported by probable cause and that law enforcement effected a controlled delivery of the package, reasoning that Mullen's retrieval of the package from the front porch while under police surveillance was sufficient to trigger execution of the search warrant.

Later, Mullen agreed to a bench trial on stipulated facts while reserving his right to appeal the district court's denial of his motion to suppress. The district found Mullen guilty, imposed an underlying prison sentence of 22 months and placed him on probation for 18 months.

On appeal, the Court of Appeals rejected Mullen's arguments concerning the lack of probable cause supporting the search warrant or that a controlled delivery never occurred. The Court of Appeals, however, found that the record failed to show that the district court advised Mullen of his right to a jury trial before he waived that right by signing the stipulation of facts. As a result, the Court of Appeals reversed Mullen's conviction and remanded the case for further proceedings. *Mullen*, 51 Kan. App. 2d at 526. Mullen filed a petition with this court seeking review of the Court of Appeals decision affirming the denial of his motion to suppress. The State filed a cross-petition seeking review of the Court of Appeals decision concluding that Mullen's jury trial waiver was invalid. This court granted Mullen's petition for review but denied the State's cross-petition.

7

*Probable Cause for the Search Warrant*

Mullen argues that the Court of Appeals erred in concluding that the search warrant was supported by probable cause. He contends that without evidence showing that occupants of a particular home are involved in drug activity, the mere fact that an occupant brings a package—addressed to the residence and likely containing illegal drugs—inside the home does not provide probable cause to search the home for illegal drugs.

Before the Court of Appeals, the State argued that Mullen should not be allowed to raise this argument on appeal because he failed to raise it before the district court. The State pointed out that Mullen's sole argument in favor of suppression was that the event triggering the warrant's execution, *i.e.*, a controlled delivery of the package to a resident, never occurred. The Court of Appeals rejected the State's contention and addressed the merits of Mullen's probable cause argument, noting that the district court, in denying Mullen's suppression motion, addressed whether probable cause supported the anticipatory search warrant. *Mullen*, 51 Kan. App. 2d at 519-20. We conclude that the Court of Appeals properly addressed the issue; likewise, we reach the merits of the issue. See *Huffmier v. Hamilton*, 30 Kan. App. 2d 1163, 1167, 57 P.3d 819 (2002), *rev. denied* 275 Kan. 964 (2003) (when trial court chooses to address issue not raised by the parties, appellate court may address issue as well).

The Fourth Amendment to the United States Constitution guarantees the right to be free from "unreasonable searches and seizures" and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." Section 15 of the Kansas Constitution Bill of Rights provides the same protections. *State v. Daniel*, 291 Kan. 490,

498, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). When evidence is illegally obtained, its suppression may be warranted under the exclusionary rule, which is a judicially created rule that safeguards against unconstitutional searches and seizures by suppressing illegally seized evidence as a deterrent to future violations. See *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); *Daniel*, 291 Kan. at 496.

A judge deciding whether an affidavit supplies probable cause for a search warrant considers the totality of the circumstances presented and makes "a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Hicks*, 282 Kan. 599, 613-14, 147 P.3d 1076 (2006). In *Hicks*, this court discussed an appellate court's role when reviewing a lower court's probable cause determination:

> "When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard." 282 Kan. 599, Syl. ¶ 2.

In *United State v. Grubbs*, 547 U.S. 90, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006), the United States Supreme Court upheld the validity of anticipatory search warrants under the Fourth Amendment. The Court stated:

9

"An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.' [Citation omitted.] Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.' . . . If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location; by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued." 547 U.S. at 94.

The *Grubbs* Court then concluded:

"[F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that if the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' [citation omitted] but also that there is probable cause to believe the triggering condition will occur. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination. [Citation omitted.]" 547 U.S. at 96-97.

See also *United States v. Rowland*, 145 F.3d 1194, 1201 (10th Cir. 1998) ("As with all warrants, probable cause to support an anticipatory warrant 'does not exist unless a sufficient nexus between the [contraband] and the place to be searched exists.' [Citation omitted.]").

In *Grubbs*, officers from the Postal Inspection Service arranged a controlled delivery of a videotape containing child pornography to the defendant's residence. The defendant had ordered the videotape from a website operated by an undercover postal

10

inspector. The affidavit made out in support of the search warrant for the defendant's home stated:

> "'Execution of this search warrant will not occur unless and until the parcel has been received by a person(s) and has been physically taken into the residence. . . . At that time, and not before, this search warrant will be executed by me and other United States Postal inspectors, with appropriate assistance from other law enforcement officers in accordance with this warrant's command.'" 547 U.S. at 92.

In concluding that the search warrant was supported by probable cause, the Court stated:

> "[T]he occurrence of the triggering condition—successful delivery of the videotape to [the defendant's] residence—would plainly establish probable cause for the search. In addition, the affidavit established probable cause to believe the triggering condition would be satisfied. Although it is possible that [the defendant] could have refused delivery of the videotape he had ordered, that was unlikely. The Magistrate therefore 'had a "substantial basis for . . . conclud[ing]" that probable cause existed.' [Citations omitted.]" 547 U.S. at 97.

Mullen argues that *Grubbs* stands for the proposition that in order for an anticipatory search warrant of a home to be supported by probable cause, there must be evidence indicating that an occupant of the home anticipates receiving a package in the mail containing contraband. In support of this contention, Mullen points to a single sentence in *Grubbs*' statement of facts which states that the defendant "purchased a videotape containing child pornography from a Web site operated by an undercover postal inspector." 547 U.S. at 92.

Mullen places too much significance on this sentence. Nowhere in *Grubbs*' legal analysis did the Court point to or rely on evidence showing the defendant's knowledge or

11

intention of receiving child pornography through the mail as contributing to the probable cause necessary to issue an anticipatory search warrant of the defendant's residence. Instead, the Court focused solely on whether the affidavit made in support of the search warrant established a fair probability (*i.e.*, probable cause) that contraband or evidence of a crime would be found inside the defendant's home once the triggering event occurred and whether there was a fair probability that the triggering event would occur. Because execution of the search warrant was contingent upon the government delivering the package—addressed to the defendant's home and containing child pornography—to the defendant's residence, the Court concluded that both prongs of the probable cause determination were satisfied. 547 U.S. at 94-97.

An argument similar to the one Mullen raises here was addressed and rejected by the Tenth Circuit Court of Appeals in *United States v. Hugoboom*, 112 F.3d 1081 (10th Cir. 1997). There, the court concluded that an anticipatory search warrant of a residence was supported by probable cause when the affidavit made in support of the warrant merely alleged that a parcel containing contraband was mailed to the residence and that the warrant would not be executed until the parcel was delivered "to a responsible adult at the residence . . . who willingly 'accept[s] delivery' and signs a receipt therefor." 112 F.3d at 1083. In reaching this holding, the *Hugoboom* court rejected the defendant's argument that the search warrant lacked probable cause because there was no evidence—besides the parcel being mailed to the residence—of drug activities taking place at the location. 112 F.3d at 1086.

The Tenth Circuit later fleshed out *Hugoboom*'s holding in *Rowland*. There, the court stated:

"As recognized in *Hugoboom*, when the warrant application indicates there will be a government-controlled delivery of contraband to the place to be searched, probable

12

cause for a search is established and an anticipatory warrant may be issued, provided the warrant's execution is conditioned on the contraband's delivery to, or receipt at, the designated place. [Citations omitted.] In this context, the *Hugoboom* court indicated that when the warrant affidavit refers to a controlled delivery of contraband to the place designated for search, the nexus requirement of probable cause is satisfied and the affidavit *need not provide additional independent evidence linking the place to be searched to criminal activity*." (Emphasis added.) *Rowland*, 145 F.3d at 1202-03.

See also *United States v. Leidner*, 99 F.3d 1423, 1427 (7th Cir. 1996) ("Several circuits agree that in order for an anticipatory warrant to satisfy the probable cause standard it must demonstrate that contraband is on a 'sure course' to the destination to be searched.").

Similarly, in *United States v. Lawson*, 999 F.2d 985 (6th Cir. 1993), the Sixth Circuit concluded that a controlled delivery of a package—mailed to the defendant's residence and containing 6 ounces of cocaine—provided probable cause to issue an anticipatory search warrant of the residence. Notably, the court rejected the argument that additional evidence connecting the residence with drug activity was needed in order to guard against an occupant being "set up" by unknowingly receiving contraband in the mail. The court reasoned "that one does not send six ounces of cocaine through the mail to a specific address on a whim." 999 F.2d at 988. See also *United States v. Washington*, 852 F.2d 803, 804 (4th Cir. 1988) (rejecting defendant's argument that delivery of package addressed to his residence and containing 154 grams of heroin did not provide probable cause for an anticipatory search warrant of his home; though neither the defendant nor his roommates were named on the package as the intended recipient, court reasoned that "[i]t is common knowledge that fictitious names are frequently used in illicit drug trafficking.").

13

The following facts can be gleaned from the affidavit at issue here:

- The package had been flagged as suspicious by a postal inspector at the Kansas City, Missouri, processing and distribution center;
- The package had been mailed from a known narcotics source state;
- The package was addressed to an illegible name at a house located on Meadowsweet Lane in Shawnee;
- The package weighed 5 lbs. 12.6 oz;
- A K-9 unit trained and certified to alert to the odors of marijuana, cocaine, methamphetamine, and heroin alerted on the package; and
- A search of the house on Meadowsweet Lane would not occur until a controlled delivery of the package to a resident of the house was accomplished.

These facts establish a fair probability that the package—addressed to the residence on Meadowsweet Lane—contained illegal drugs and, thus, constituted evidence of an illegal drug trafficking scheme. *Cf. State v. Barker*, 252 Kan. 949, 959-60, 850 P.2d 885 (1993) (A K-9 alert may supply probable cause necessary to search a vehicle as long as there is some evidence that K-9's behavior reliably indicates the likely presence of a controlled substance.). Further, the search warrant's triggering event—the controlled delivery of the package to a resident of the house—would establish a fair probability that, upon execution of the search warrant, contraband or evidence of a crime would be found inside the house. Additionally, the affidavit established probable cause to believe that the triggering event—a controlled delivery to a resident of the house, effected by a postal inspector—would be satisfied. Thus, we conclude that the affidavit provided a substantial basis for the district court judge's determination that probable cause supported a search warrant of the home.

14

*The Controlled Delivery*

Mullen argues that the search warrant was not validly executed because the triggering event—a successful controlled delivery to a resident of the home—did not occur. Mullen contends that in order to accomplish a controlled delivery, Inspector Lewis was required to hand deliver the package to a resident of the home.

Whether the undisputed facts of this case establish that a controlled delivery was accomplished appears to raise a question of law subject to unlimited review. See *State v. James*, 301 Kan. 898, 908, 349 P.3d 457 (2015) ("When the material facts are not in dispute, as here, we will exercise plenary review of the district court's ruling on a motion to suppress evidence."). Relevant to this inquiry are the guiding principles stated in *Hicks* for determining whether an affidavit establishes probable cause for a search warrant:

> "When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit *provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched*. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard." (Emphasis added.) 282 Kan. 599, Syl. ¶ 2.

To support his argument that a controlled delivery requires a hand-to-hand delivery, Mullen points to two Kansas cases:  *State v. Duhon*, 33 Kan. App. 2d 859, 861, 109 P.3d 1282 (2005), and *State v. Windes*, 13 Kan. App. 2d 577, 578-79, 776 P.2d 477 (1989). While both cases describe, within their respective statement of facts, a controlled delivery occurring when a package was directly handed to each defendant, the State

15

correctly responds that "neither case addressed whether a hand-to-hand delivery was the only method through which a controlled delivery could be completed."

In determining how a controlled delivery is accomplished, the Court of Appeals panel in this case looked to the United States Supreme Court's discussion of the subject in *Illinois v. Andreas*, 463 U.S. 765, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983). There, the Court stated:

"The lawful discovery by common carriers or customs officers of contraband in transit presents law enforcement authorities with an opportunity to identify and prosecute the person or persons responsible for the movement of the contraband. To accomplish this, the police, rather than simply seizing the contraband and destroying it, make a so-called controlled delivery of the container to its consignee, allowing the container to continue its journey to the destination contemplated by the parties. The person dealing in the contraband can then be identified upon taking possession of and asserting dominion over the container.

"The typical pattern of a controlled delivery was well described by one court:

'Controlled deliveries of contraband apparently serve a useful function in law enforcement. They most ordinarily occur when a carrier, usually an airline, unexpectedly discovers what seems to be contraband while inspecting luggage to learn the identity of its owner, or when the contraband falls out of a broken or damaged piece of luggage, or when the carrier exercises its inspection privilege because some suspicious circumstance has caused it concern that it may unwittingly be transporting contraband. Frequently, after such a discovery, law enforcement agents restore the contraband to its container, then close or reseal the container, and authorize the carrier to deliver the container to its owner. When the owner appears to take delivery he is arrested and the container with the contraband is seized and then searched a second time for the contraband known to be there.' *United States v. Bulgier*, 618 F.2d 472, 476 (7th Cir. 1980), *cert. denied* 449 U.S. 843 (1980)."

*Andreas*, 463 U.S. at 769-70.

16

At issue in *Andreas* was whether police needed to secure a search warrant to reopen a container—addressed to the defendant and, based on a lawful search, known to contain marijuana—that undercover law enforcement officers had delivered to the defendant's apartment. Officers later seized the container when they arrested the defendant upon seeing him leave his apartment with the container 30 to 45 minutes after the delivery. The container was taken to the police station and reopened without police first obtaining a search warrant. 463 U.S. at 767-68.

An Illinois appellate court affirmed the district court's suppression of the marijuana found inside the container. The court reasoned that the officers had failed to effect a "'controlled delivery'" of the container which, in the court's view, required the officers to maintain "'dominion and control' over the container at all times." 463 U.S. at 768. Because the container was out of the officers' sight for 30 to 45 minutes while inside the defendant's apartment, the officers could not be "'absolutely sure'" that its contents had remained unchanged. Thus, the police were required to obtain a search warrant in order to reopen the container at the police station. 463 U.S. at 768.

The Supreme Court rejected the notion that police had to obtain a warrant in order to reopen the container. In reaching this conclusion, the Court reasoned that

> "the rigors and contingencies inescapable in an investigation into illicit drug traffic often makes 'perfect' controlled deliveries and the 'absolute certainty' demanded by the Illinois court impossible to attain. Conducting such a surveillance undetected is likely to render it virtually impossible for police so perfectly to time their movements as to avoid detection and also be able to arrest the owner and reseize the container the instant he takes possession. Not infrequently, police may lose sight of the container they are trailing, as is the risk in the pursuit of a car or vessel." *Andreas*, 463 U.S. at 772.

17

The Court of Appeals acknowledged that while *Andreas* did not directly answer the question of what constitutes a controlled delivery, the case indicated

"that what makes [a] delivery a controlled delivery is that it was performed under the control and supervision of law enforcement officers. This interpretation is supported by numerous cases discussing a controlled delivery where hand-to-hand contact was not required. For example, in *State v. Bierer*, 49 Kan. App. 2d 403, 405-06, 308 P.3d 10, *rev. denied* 298 Kan. 1204 (2013), a postal inspector contacted the police about a suspicious package he believed contained drugs. After a K-9 unit alerted to the package for narcotics, a controlled delivery of the package was arranged. The postal inspector knocked on the door of the house; however, when no one responded, he left the package at the front door. Later, Bierer arrived and took the package from the front door and placed it in his vehicle. The panel referred to this as a controlled delivery. *Bierer*, 49 Kan. App. 2d at 413; see *Rowland*, 145 F.3d at 1204 (delivery to a post office box was a controlled delivery); *United States v. Fadipe*, 43 F.3d 993, 994 (5th Cir. 1995) (delivery to the mail box at an apartment complex was a controlled delivery).

"The dominant feature in the cases discussing controlled deliveries is that the delivery is supervised by police officers, meaning police exercise control over when and how the delivery occurs. Delivery of a controlled substance is defined in K.S.A. 2011 Supp. 65-4101(g) as 'the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship.' This appears to be what occurred in this case." *Mullen*, 51 Kan. App. 2d at 522-23.

The panel's reasoning that a "controlled delivery" does not require law enforcement to employ a specific method of conveyance (*e.g*., handing the package to a resident versus leaving the package on the porch or in the mailbox for a resident to pick up) is sound. The cases cited by the panel, along with the standard applicable for reviewing a search warrant, see *Hicks*, 282 Kan. 599, Syl. ¶ 2, indicate that as long as the means employed to deliver contraband to the site of an anticipatory search warrant was (1) performed under the control and supervision of law enforcement officers and (2)

18

establishes a fair probability that the contraband will be found within the site upon execution of the warrant, then the delivery will be considered a "controlled delivery."

Here, the affidavit indicated that Inspector Lewis would perform a controlled delivery of the package to a resident of the Meadowsweet Lane house. Lewis, while under the surveillance of Shawnee police officers, approached the house to deliver the package. He knocked on the door and yelled, "Post Office," but no one answered the door. After waiting a minute, Lewis left the package at the front door of the house as the package sender had authorized. While the package was under police surveillance, Mullen, a presumptive resident of the home, opened the front door, picked up the package, and took it inside the home.

These facts establish that a controlled delivery of the package to a resident of the home was accomplished. The method used to deliver the contraband (*i.e.*, leaving the package at the front door and a resident, in turn, retrieving it) was performed under the control and supervision of law enforcement officers. Here, the method used to deliver the contraband established a fair probability that the contraband would be found inside the house. We conclude that the event triggering execution of the search warrant, *i.e.*, a controlled delivery of the package to a resident of the home, occurred in this case and that the police acted appropriately when they entered the home pursuant to the search warrant.

The Court of Appeals correctly affirmed the district court's ruling denying Mullen's motion to suppress.