NOT DESIGNATED FOR PUBLICATION

No. 117,748

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KIRK A. TESKE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., Judge. Opinion filed July 27, 2018. Affirmed in part and reversed in part.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and MALONE, JJ.

HILL, J.:  To obtain a search warrant for someone's residence, the affidavit prepared by the police to obtain that warrant must contain more than a description of the suspect's illegal activity. That affidavit must also display a connection between the illegal activity and the suspect's residence to establish a fair probability that evidence of a crime will be found there. Here, none of the allegations in the affidavit submitted for a search warrant established a fair probability that drugs would be in Kirk A. Teske's residence. In fact, there is so little indicia of probable cause in this affidavit, we hold it was entirely unreasonable for the officers to believe the warrant was valid, and we refuse to apply the "good-faith exception" to the Fourth Amendment exclusionary rule. The district court

1

erred when it failed to suppress the contraband found in Teske's residence. We reverse his drug convictions. Because we are reversing his drug convictions, we need not consider the issue about his waiver of his right to a jury trial. It is now moot. The conviction for misdemeanor battery is affirmed.

*The investigation begins with the report of a battery.*

For context, we point out that Marjorie Heim was the alleged victim of Teske's battery. She was at the local Walmart with Randy Hyatt when she allegedly suffered a drug-induced seizure.

On July 17, 2016, Marjorie Heim filed a police report claiming that Teske had dragged her across the floor. A deputy sheriff investigated. A few days later, on July 20, 2016, the deputy applied for a search warrant to search Teske's residence for drugs and drug paraphernalia and to take photographs of the residence where the battery had occurred.

The affidavit filed to obtain the search warrant included the following:

- On July 13, 2016, Heim was sitting on the couch at Teske's residence. Teske flipped the couch over and dragged her by her wrist, arms, and hair through the residence. He pulled her to the back door and threw her onto the back deck. Teske and Heim were in an "on and off" relationship.
- When Heim was at Walmart with Hyatt, she had a seizure and was taken to a hospital. The toxicology report showed the seizure could have been induced by methamphetamine.
- At the request of Ashley Sours, the deputy went to Hyatt's residence, a convicted drug user, to retrieve Heim's personal items. Hyatt told the deputy that he had seen Heim use narcotics in his residence.

2

- On July 19, 2016, Heim was asked to leave the residence where she was staying because of her methamphetamine use.

- Heim was arrested and booked into jail on a failure to appear warrant. Teske bailed her out. According to "family members," Heim and Teske were both high on narcotics.

- Heim's brother, Raymond Nioce, told the deputy that Heim used narcotics and Teske was physically abusive toward her.

- Nioce also told the deputy that Hyatt was a drug user. Nioce was at Hyatt's residence previously when a search warrant was executed. After the search was completed, Hyatt showed Nioce a trap door in the floor of his bedroom with a large bundle of syringes inside.

- Several search warrants had been executed at this residence in the past and syringes had been collected as evidence.

A district judge issued the search warrant. During the search of Teske's residence, officers discovered many pipes and syringes. One pipe contained marijuana residue. Officers also discovered a baggie containing methamphetamine.

The State charged Teske with possession of methamphetamine; possession of drug paraphernalia; possession of marijuana; and battery of Heim.

Alleging that the search warrant affidavit did not contain sufficient facts to establish probable cause that drugs or drug paraphernalia would be found at his residence, Teske moved to suppress the physical evidence seized from the search of his residence. The judge denied the motion, noting he had signed the search warrant. The court acknowledged that Teske and Hyatt did not live at the same residence and noted that the police used the same affidavit to obtain a search warrant for Hyatt's residence. The judge's words finding probable cause here focused on guilt by association: the officers were seeking evidence of domestic battery, Heim was an addict who was known to

3

frequent Teske's residence, and "people who are using drugs are more likely to get into a fight with each other."

After this ruling, both sides submitted the case to the judge on stipulated facts. The court found Teske guilty on all charges and imposed a 13-month prison sentence and 18 months' probation. Teske raises two points in his appeal. First, the court erred when it failed to suppress the evidence. Second, since Teske never did waive his right to a jury trial, we must vacate his convictions and remand for a jury trial. We address the first issue and need not move on to the second.

*Search warrant law guides us.*

The task of the judge issuing a search warrant is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of any person supplying hearsay information, a crime has been or is being committed and there is a fair probability that contraband or evidence of a crime will be in a particular place. *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016).

When an affidavit in support of an application for a search warrant is challenged, our task is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. This review is inherently deferential. We do not determine whether probable cause existed, but whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be in the place to be searched. Even so, because we can evaluate the content of an affidavit as well as the issuing magistrate, we may perform our own evaluation of the affidavit's sufficiency under this deferential standard. *Mullen*, 304 Kan. at 353. The determination must be made from the four corners of the affidavit. *State v. Malm*, 37 Kan. App. 2d 532, 543, 154 P.3d 1154 (2007).

There are time and place components required in the information used to secure a search warrant. Specifically, to obtain a warrant to search a suspect's residence, the affidavit must contain more than a description of the suspect's illegal activity. There must be a connection or "nexus" between the illegal activity and the suspect's residence sufficient to establish a fair probability that evidence of a crime will be in the residence. *Malm*, 37 Kan. App. 2d at 543; *State v. Owen*, No. 105,197, 2011 WL 4035782, at *4-5 (Kan. App. 2011) (unpublished opinion) (finding no probable cause when all information in affidavit concerned marijuana cultivation at defendant's prior residence, not his current residence); see *State v. Hicks*, 282 Kan. 599, 614-17, 147 P.3d 1076 (2006).

Two cases guide our analysis. In *Malm*, a manager at a Target store called police after the defendant and his passenger suspiciously tried to purchase cold tablets containing pseudoephedrine. Officers followed them from the Target store in Salina to Carlton, Kansas. At one point, the defendant stopped the van and looked to see if he was being followed. Eventually the van pulled up alongside the officer's vehicle and the defendant asked if the officers needed help. The officers stopped the van. One officer asked the defendant where he lived and the defendant replied that he was homeless and did not know where his wife lived. The officers arrested the defendant on an outstanding warrant and searched the van. They found tablets containing pseudoephedrine, a box of coffee filters, a syringe, and several small baggies with white powder residue believed to be methamphetamine.

Officers applied for a search warrant to search the defendant's residence. The affidavit stated that the affiant believed that the defendant was transporting the items to his residence to manufacture methamphetamine. The affidavit also stated that the defendant had a prior conviction for possession of methamphetamine and was known in the community as a methamphetamine cook. The defendant's residence had never been under surveillance and the officers had no specific knowledge that the defendant used his residence to manufacture or sell methamphetamine. Our court found that there was an

5

insufficient nexus between the defendant's suspected criminal activity and his residence; the evidence of a nexus was too speculative. *Malm*, 37 Kan. App. 2d at 546.

Another case is instructive as well. In *State v. Rodenbeek*, No. 93,283, 2006 WL 399117, at *5 (Kan. App. 2006) (unpublished opinion), police obtained search warrants for Rodenbeek's warehouse and his residence. But most of the incriminating information in the affidavit concerned Rodenbeek's warehouse. The court held that "just because Rodenbeek used his warehouse as a drug party house does not establish a fair probability that drugs would be found in his residence." 2006 WL 399117, at *5.

*We apply the guidance from those two cases to this case.*

None of the allegations in the affidavit used here established a fair probability that drugs would be in Teske's residence. The affidavit did not allege that Heim used drugs at Teske's residence. The affidavit did not state that the officers conducted surveillance or made other attempts to corroborate their belief that drugs would be found at Teske's residence.

Only one allegation that Teske was even a drug user came from some unspecified "family members." This lack of specificity is problematic. While hearsay is permitted in a search warrant affidavit, the "veracity" and "basis of knowledge" of the witness providing the hearsay information must be considered when determining whether probable cause exists. *Hicks*, 282 Kan. at 614. The affidavit here fails to identify the family members who accused Teske of being high on narcotics, nor does it say how many family members made the accusation. The affidavit did state that Heim's brother was not happy that Teske was physically abusive toward Heim and wanted Teske away from her. Evidence that a suspect has used drugs is insufficient alone to constitute probable cause to search the user's residence. See *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016).

6

The affidavit did allege that search warrants had been executed at "this residence" in the past and syringes had been collected as evidence. But, in context, "this residence" refers to Hyatt's residence, not Teske's.

Going further, this affidavit contains no connection between the domestic battery and Heim's drug use. That is an assumption made by the judge who does not elaborate upon what facts he makes that assumption. The affidavit did say that the officers wanted to take photographs of the residence where the battery had occurred. There certainly was a nexus between the battery and Teske's residence. But the remainder of the affidavit was about drugs. But our inquiry does not end there.

*The good-faith exception does not save this search.*

Even though the affidavit lacked probable cause, the physical evidence police obtain from a defective search warrant is not necessarily inadmissible. The exclusionary rule is a judicially-created remedy to prevent the use of unconstitutionally obtained evidence in a criminal proceeding against the subject of the illegal search. The rule applies when it would act as a deterrent. *Hudson v. Michigan*, 547 U.S. 586, 594, 126 S. Ct. 2159, 165 L. Ed 2d 56 (2006). The good-faith exception in *United States v. Leon*, 468 U.S. 897, 920-22, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), applies when an affidavit supplies no substantial basis for the determination of probable cause but does provide some indicia of probable cause sufficient to render official reliance reasonable. *State v. Daniel*, 291 Kan. 490, 498-500, 242 P.3d 1186 (2010).

The rationale for the exception to the rule is clear. The Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid unless:

7

- the magistrate issuing the warrant was deliberately misled by false information;
- the magistrate wholly abandoned his or her detached or neutral role;
- there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or
- the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized. *State v. Powell*, 299 Kan. 690, 700, 325 P.3d 1162 (2014).

Our Supreme Court has described search warrant affidavits in terms of a continuum. At one end are affidavits that provide a substantial basis for determining the existence of probable cause. In such cases, the warrant is valid. At the other end of the continuum are so-called "bare bones" affidavits. Those affidavits are so lacking in indicia of probable cause that a belief in its existence is unreasonable. In those cases the officer's reliance on the warrant is objectively unreasonable and suppression is appropriate. In the middle of the continuum are affidavits that provide no substantial basis for determining probable cause but do provide some indicia of probable cause that is sufficient to render the officer's reliance on the warrant reasonable. In those cases, the good-faith exception applies. *State v. Zwickl*, 306 Kan. 286, 294-95, 393 P.3d 621 (2017). Teske validly contends that this is a bare bones affidavit.

The threshold to avoid the good-faith exception is high. Here, the good-faith exception applies if the affidavit establishes a "'minimal nexus between the place to be searched and the suspected criminal activity.'" *Zwickl*, 306 Kan. at 295.

Another case that is instructive on this point is *State v. Althaus*, 49 Kan. App. 2d 210, 213-15, 226, 305 P.3d 716 (2013). In *Althaus*, the search warrant affidavit focused not on the defendant, but on other people suspected of drug crimes. The evidence that the

8

defendant used or trafficked drugs rested on his association in limited and innocuous ways with an associate of a possible drug dealer. The affidavit was void of indicia that evidence of drug crimes would be in the defendant's home. The officers saw nothing suspicious at the defendant's house. They did not inspect the defendant's trash or otherwise collect information about the house. Our court held that the officer's reliance on the search warrant was objectively and entirely unreasonable and thus the good-faith exception did not apply. 49 Kan. App. 2d at 212, 230.

Like *Althaus*, the affidavit here established no minimum nexus between Teske's residence and drugs. The affidavit focused on drug activity at Hyatt's residence and Heim's drug usage. The affidavit was void of indicia that evidence of drug crimes would be found at Teske's home. And the affidavit does not allege that the officers collected any information about Teske's residence or observed anything suspicious at the house. The officer's reliance on the search warrant was objectively and entirely unreasonable. The good-faith exception does not apply.

We hold the district court erred when it failed to suppress the evidence seized from Teske's residence. We reverse his drug convictions. We need not address his jury trial waiver issue as that is now moot. We affirm his battery conviction as there is no right to a jury trial on that count.

Affirmed in part and reversed in part.

* * *

MALONE, J., dissenting:  I respectfully dissent from the majority's conclusion that the good-faith exception does not apply to uphold the search of Kirk A. Teske's residence. Initially, I note that although the district court did not rely on the good-faith exception to uphold the search, both parties have addressed the issue in their appellate

briefs as applied to the undisputed evidence in the record. Thus, the issue is properly before this court to decide. Based on the record, I am unable to find that there was so little indicia of probable cause contained in the search warrant affidavit that it was entirely unreasonable for the officers to believe the warrant was valid. See *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

The majority opinion correctly states that to obtain a warrant to search a suspect's residence, there must be a connection or "nexus" between the illegal activity described in the affidavit and the suspect's residence sufficient to establish a fair probability that evidence of a crime will be in the residence. *State v. Malm*, 37 Kan. App. 2d 532, 543, 154 P.3d 1154 (2007); *State v. Rodenbeek*, No. 93,283, 2006 WL 399117, at *5 (Kan. App. 2006) (unpublished opinion). I agree with the majority that there was an insufficient "nexus" between the illegal drug activity described in the affidavit and Teske's residence to establish probable cause to search the residence for drugs. But I note that in both *Malm* and *Rodenbeek*, this court went on to either rule that the good-faith exception applied as a matter of law to uphold the search or that the case should be remanded to the district court to determine whether the good-faith exception applied to uphold the search. See *Malm*, 37 Kan. App. 2d at 546-49; *Rodenbeek*, 2006 WL 399117, at *7.

"'The threshold to avoid the *Leon* good-faith exception is a high one.' [Citation omitted.]" *State v. Zwickl*, 306 Kan. 286, 295, 393 P.3d 621 (2017). The majority concedes that the search warrant affidavit established a nexus between the battery and Teske's residence. As to the drug activity, the search warrant affidavit is somewhat confusing. It appears from the affidavit that on or before July 19, 2016, Marjorie Heim was staying at Randy Hyatt's residence. Then, on July 19, 2016, Hyatt asked Heim to leave his residence, she was arrested on a warrant, Teske bonded her out of jail, and she moved into Teske's residence. According to family members, Heim and Teske were both high on narcotics. On July 20, 2016, the date the search warrant was signed and executed, Heim's brother, Raymond Nioce, told Deputy Cecil Mercer that he was concerned about

10

Heim's use of narcotics and he wanted to get Heim away from Teske who was physically abusive toward her. The affidavit goes on to establish a clear nexus between drug activity and Hyatt's residence, where Heim was no longer staying.

The last paragraph of the affidavit alleges that several search warrants had been executed at "this residence" in the past and syringes had been collected as evidence. I agree with the majority that in context, "this residence" seems to refer to Hyatt's residence, not Teske's. But the allegation is confusing and may have contributed to the district court's conclusion that the affidavit established probable cause to search Teske's residence. In any event, no party is alleging that Mercer deliberately misled the court by supplying false information, which might prohibit the application of the good-faith exception to the warrant requirement. See *Leon*, 468 U.S. at 923.

Mercer applied for a warrant before trying to search Teske's residence, as is the favored practice. See *Malm*, 37 Kan. App. 2d at 543. I disagree that there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for officers to believe the warrant was valid. Instead, the officers acted in reasonable reliance on the search warrant and could not have been expected to second-guess the magistrate's determination that the search was legal. I believe this conclusion can be reached as a matter of law based on the record before this court, but if there is any doubt about it, this case should be remanded to the district court to conduct a hearing to determine whether the good-faith exception applies to uphold the search of Teske's residence.