NOT DESIGNATED FOR PUBLICATION

No. 127,436

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES J. LEE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Submitted without oral argument. Opinion filed July 25, 2025. Reversed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Ashley McGee*, assistant county attorney, *Marc Goodman*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM: James J. Lee appeals his conviction for possession of methamphetamine with the intent to distribute. Among other things, Lee contends that the district court erred in failing to suppress evidence seized from his residence pursuant to two search warrants obtained by the Emporia Police Department. The first warrant was issued as a result of a domestic battery investigation involving a couple who were staying at Lee's residence. Although Lee was not a suspect in the domestic battery investigation, the law enforcement officers executing the initial warrant searched his bedroom—which

was on the opposite side of the residence from where the alleged domestic violence incident occurred—and found a small amount of drugs in a wooden box.

As a result of the discovery of drugs during the execution of the first search warrant, the officers then obtained a second warrant. Significantly, the second search warrant did not state the address of the place to be searched. Nevertheless, in executing the second warrant, law enforcement officers found more drugs in a safe in Lee's home office as well as cash and other items. After being charged with several drug charges, Lee unsuccessfully moved for suppression of the evidence seized from his home pursuant to the two search warrants. A jury subsequently found Lee guilty of one of the drug charges but acquitted him on another.

Based on our review of the record on appeal, we conclude that the district court erred in denying Lee's motion to suppress evidence. As to the first search warrant, we find that it was overbroad and lacked probable cause to justify the search of the box kept in Lee's bedroom. Additionally, we find that the second warrant was facially invalid because it did not contain the address of the property to be searched and did not specifically incorporate the supporting affidavit as part of the warrant. In light of these findings, the remaining issues are moot. Thus, we reverse the district court's denial of Lee's motion to suppress evidence and reverse his conviction.

FACTS

On September 6, 2022, law enforcement officers were dispatched to an address located on Eveningside Drive in Emporia. The dispatcher advised the officers that a caller had reported that a woman—later identified as Kendra Behrle—had her nose broken and had been "choked out" at the residence. When officers arrived at the scene, five people were present—including Lee, who was identified as the owner of the residence.

Although Behrle admitted to the responding officers that she and her boyfriend, Ceanta Plummer, had been in an argument, she denied that Plummer physically assaulted her. Even so, the officers observed that she had scratches on her face, her eyes were puffy, and she was shaking or trembling. In questioning several other people present at the residence, the officers were told about a bloody handkerchief that had purportedly been used by Behrle after the alleged domestic battery.

At no time was Lee identified as a suspect in the domestic battery investigation. Rather, the officers learned that Lee and his girlfriend shared a bedroom on the north side of the residence. The officers also learned that Lee had a home office for his bail bond business that was also located on the north side of the residence. Further, the officers learned that Plummer and Behrle—who were the residents identified as being involved in the alleged domestic battery incident—shared a bedroom on the south side of the residence. Another person evidently stayed in the residence's garage.

Based on the officers' preliminary investigation, Detective Kelly Davis left the scene to apply for a search warrant in an attempt to obtain evidence of the alleged domestic battery incident involving Plummer and Behrle. Davis succeeded in obtaining a warrant that authorized the officers to search for:

> "Evidence of a fight including but not limited to blood evidence, damaged or overturned furniture and evidence to indicate the occupants or residents of the residence including, but not limited to cell phones, receipts, notes, ledgers, address books, correspondence, utility bills, photo I.D.'s, photographs, videotapes, and/or DVD's and digital media including, but not limited to cameras, USB drives, and computers."

While executing this warrant, Investigator Kraig Cersovsky went into Lee's bedroom and looked in a small wooden box. When Cersovsky opened the box, he found what he believed to be a small amount of methamphetamine. Based on this discovery, Cersovsky sought a second search warrant. It appears that some of the other officers

3

remained at the residence while Cersovsky successfully obtained a warrant to search the residence for additional drugs. But this search warrant failed to set forth the address of the residence. Although the search warrant included a supporting affidavit identifying the address, the search warrant did not specifically incorporate the affidavit by reference.

During the execution of the second search warrant, Investigator Cersovsky found an open safe inside of a closet in a room that Lee used as an office for his bail bond business. Looking into the safe, Cersovsky found a baggie containing a crystal substance that he believed to be methamphetamine. The safe also contained a bong, a digital scale, a bank bag containing cash, and deposit receipts related to Lee's bonding business.

On July 13, 2023, the State charged Lee with one count of distributing, or possession with intent to distribute methamphetamine; one count of possession of drug paraphernalia with the intent to use it for distributing a controlled substance; and one count of using a communication device with the intent to facilitate the distribution of methamphetamine. The State later filed an amended information that dropped the charge of using a communication device with the intent to facilitate the distribution of methamphetamine.

Before trial, Lee moved to suppress all of the evidence obtained as a result of the two search warrants. At the suppression hearing, Detective Davis testified—as to the first search warrant—that it is his standard practice to request authorization to obtain evidence of proof of residency in domestic violence cases. Davis explained that even though the officers had been provided with information by witnesses regarding the occupancy of each room of the residence, it needed to be verified.

As to the second search warrant, Investigator Cersovsky conceded that it failed to set forth the address of the residence to be searched. He testified that he used a template that was supposed to transfer information from the supporting affidavit to the search

4

warrant. Cersovsky further testified that he failed to notice that the address was missing and that he was responsible for this oversight. Moreover, he testified that he was not attempting to mislead the court. At the conclusion of the hearing, the district court denied Lee's motion to suppress.

A jury trial was held on January 8, 2024, on the remaining charges of possession of methamphetamine with intent to distribute and possession of drug paraphernalia. After considering the evidence presented, the jury found Lee guilty of possession of methamphetamine with intent to distribute but acquitted him of possession of drug paraphernalia. The district court later sentenced Lee to 98 months in prison. Thereafter, Lee filed a timely notice of appeal.

ANALYSIS

On appeal, Lee contends—among other things—that the district court erred by failing to suppress the evidence seized as a result of the first search warrant that led to the discovery of evidence that was used to support the application for the second search warrant. Although Lee concedes that law enforcement officers had probable cause to perform a particularized search for evidence of the alleged domestic battery incident involving Plummer and Behrle, he challenges the broad scope of the first search warrant. Specifically, Lee argues that the language of the first search warrant—which authorized law enforcement officers to search for evidence of proof of occupancy—failed to meet the particularity required by the Fourth Amendment and improperly permitted a general search of his home.

The Fourth Amendment of the United States Constitution and section 15 of the Bill of Rights to the Kansas Constitution protect all persons against unreasonable searches and seizures. The full text of the Fourth Amendment reads:

5

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause*, supported by Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized*." (Emphases added.) U.S. Const. amend. IV.

As the United States Supreme Court has recognized, the Fourth Amendment was enacted as a "response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Carpenter v. United States*, 585 U.S. 296, 303, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018) (quoting *Riley v. California,* 573 U.S. 373, 403, 134 S. Ct. 2473, 189 L. Ed. 2d 430 [2014]). In fact, it was the use of "general warrants and warrantless searches that had so alienated the colonists and had helped speed the movement for independence." *Chimel v. California*, 395 U.S. 752, 761, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). As a result, the plain language of the Fourth Amendment not only requires all searches and seizures to be reasonable but also forbids the use of general or non-particularized warrants.

As a practical matter, the danger of search warrants that lack particularity is that they improperly grant law enforcement officers the authority to perform an indiscriminate search of persons or their property. In other words, the Fourth Amendment's requirement that the places to be searched and the items to be seized must be described "particularly" is an important safeguard against fishing expeditions or other government overreach. U.S. Const. amend. IV. This constitutional safeguard is especially important in searches of one's home. See *Silverman v. United States*, 365 U.S. 505, 511, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").

In reviewing a district court's ruling on a motion to suppress, we apply a bifurcated standard of review. We review the district court's factual findings to determine whether

they are supported by substantial competent evidence. Next, we conduct a de novo review of the district court's ultimate legal conclusion. *State v. Martin*, 318 Kan. 538, 558, 544 P.3d 820 (2024). Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

Furthermore, it is the State that bears the burden of proving the lawfulness of a particular search and seizure. *State v. Hillard*, 315 Kan. 732, 747, 511 P.3d 883 (2022). At the same time, we review the evidence under a deferential standard to determine whether the affidavit presented in support of a search warrant "provided the issuing judge 'with a substantial basis for determining that probable cause existed.' [Citation omitted.]" *State v. Regelman*, 309 Kan. 52, 62, 430 P.3d 946 (2018). Because we are able to evaluate the content of a search warrant and its supporting affidavit just as well as the issuing judge, we may perform our own evaluation of the sufficiency of these documents under this deferential standard. *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016) (citing *State v. Hicks*, 282 Kan. 599, Syl. ¶ 2, 147 P.3d 1076 [2006]).

Probable cause is the reasonable belief that a specific crime has been committed by a specific defendant and that evidence of the specific crime is located at a specific location. *State v. Fewell*, 286 Kan. 370, 377-78, 184 P.3d 903 (2008). Here, it is undisputed that the first search warrant was obtained by law enforcement officers as part of their investigation of Plummer for allegedly committing a crime of domestic violence against his girlfriend at Lee's residence. As discussed above, nothing in the record suggests that Lee played any role in the alleged domestic violence incident. Likewise, nothing in the record suggests that the law enforcement officers were seeking to search for drugs when they obtained the first search warrant.

In addition to the Fourth Amendment to the United States Constitution and section 15 of the Bill of Rights to the Kansas Constitution, K.S.A. 22-2502(a) also requires that a

search warrant particularly describe "a person, place or means of conveyance to be searched and things to be seized." The search warrant must also command the officer directed to execute the warrant to search a particular place described in the warrant. K.S.A. 22-2507. Again, the purpose of the constitutional and statutory requirement that search warrants particularly describe the place to be searched and person or property to be seized is to prevent illegal general searches. See *State v. LeFort*, 248 Kan. 332, 337, 806 P.2d 986 (1991).

Here, the language of the first search warrant not only allowed officers to search for evidence relating to the alleged domestic battery committed by Plummer against his girlfriend—including "blood evidence" and evidence of "damaged or overturned furniture," but also authorized an indiscriminate search of the residence for:

> "[E]vidence to indicate the occupants or residents of the residence including, but not limited to cell phones, receipts, notes, ledgers, address books, correspondence, utility bills, photo I.D.'s, photographs, videotapes, and/or DVD's and digital media including, but not limited to cameras, USB drives, and computers. . . . [at] 401 Evening Side Drive, in Emporia, Lyon County, Kansas[.]"

On its face, we find the scope of the first search warrant to go well beyond a search for evidence of the alleged domestic violence incident involving Plummer and Behrle. Here, there was no mention in the supporting affidavit nor in the first search warrant to suggest that any other crimes were under investigation or to suggest that Lee was suspected of any criminal activity. Consequently, we find that the first search warrant was overbroad and improperly permitted law enforcement officers to conduct a generalized search of Lee's residence at the discretion of the officer executing the search. See *LeFort*, 248 Kan. at 337.

The language used in the first search warrant was not limited to a certain room or rooms in the residence nor was it limited to certain items. Instead, it granted the law

enforcement officers executing the warrant carte blanche to conduct a non-particularized search of the entire residence for items unrelated to the alleged incident of domestic battery. We agree that there was sufficient probable cause—established with particularity—to justify the issuance of a search warrant for blood or other physical evidence relating to the domestic battery investigation. But we do not find that there was probable cause to extend the search warrant to include a generalized search of all rooms of the residence under the guise of trying to determine the occupancy of those living there.

It is important to reiterate that the only crime under investigation at the time the first search warrant was issued was the alleged domestic battery committed by Plummer against Behrle. Likewise, the record reflects that at the time the application was filed, the investigating officers were aware that Plummer and Behrle slept in the south bedroom of Lee's residence and that they were involved in a romantic relationship. In addition, the record reflects that everyone at the residence when the officers initially responded to the report of a domestic violence incident identified themselves, and we find nothing to suggest that Lee or anyone other than Plummer was a suspect in the domestic incident.

In summary, we find that the first search warrant was not particularized as required by the Fourth Amendment of the United States Constitution, by section 15 of the Kansas Constitution Bill of Rights, or by Kansas statutory law. In particular, we find that the first search warrant was overbroad, and there was no probable cause established by the State to support a search of Lee's residence for evidence beyond that specifically related to the investigation of the alleged domestic battery committed by Plummer. Likewise, we do not find that it constituted good faith for the officers involved in this case to use a domestic battery investigation—without more—as a justification for a wholesale search of Lee's residence. As a result, we conclude that any evidence found during the execution of the first search warrant should be suppressed.

9

Because the second search warrant was based on the evidence of drugs improperly seized based on the faulty first search warrant, we find that it is also invalid. In addition, we find that the second search warrant was invalid on its face because it failed to contain the address of the place to be searched. In *Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004), the United States Supreme Court held that the fact that an application for a search warrant might adequately describe the things to be seized does not save a search warrant from being found to be facially invalid because the Fourth Amendment requires particularity in the search warrant itself rather than simply in the supporting documents.

We recognize that in *Groh*, the United States Supreme Court left open the possibility that a search warrant may still be valid if the supporting application or affidavit is expressly incorporated into and accompanies the warrant. 540 U.S. at 557-58. Even so, we find that this exception does not apply in this case because the second search warrant was not incorporated into the warrant by reference. 540 U.S. at 558; see *State v. Kleypas*, 305 Kan. 224, 253, 382 P.3d 373 (2016) (facially invalid warrant did not "specifically incorporate" the affidavit or application). In *Kleypas*, our Supreme Court rejected the applicability of the good-faith exception based on the rationale that no reasonable officer would believe that a warrant that did not identify the place to be searched or the things to be seized was valid. 305 Kan. at 254. Accordingly, we also reject the applicability of the good-faith exception in this case.

CONCLUSION

We conclude the district court erred in denying Lee's motion to suppress. The first search warrant was overbroad, failed to meet the requirements of particularity, and lacked probable cause for a general search of Lee's residence under the guise of looking for proof of residency relating to the domestic battery investigation. In addition, we conclude the second search warrant—which was based on a small amount of drugs found in a box

10

in Lee's bedroom during the execution of the first search warrant—was invalid on its face because it failed to include the address of the place to be searched and did not specifically incorporate the supporting affidavit as part of the warrant. Consequently, we reverse the district court's denial of Lee's motion to suppress evidence as well as his conviction based on the evidence seized as a result of the defective search warrants. In light of our conclusion, we find the remaining issues raised on appeal are moot.

Reversed.